HENRY WEISSMANN (SBN 132418)
Henry.Weissmann@mto.com
HOJOON HWANG (SBN 184950)
Hojoon.Hwang@mto.com
DANIEL J. POWELL (SBN 230304)
Daniel.Powell@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendant
CELLCO PARTNERSHIP (D/B/A VERIZON WIRELESS)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CATHERINE GELLIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIZON COMMUNICATIONS, INC., a Delaware Corporation; VERIZON WIRELESS, an unincorporated association; CELLCO PARTNERSHIP, an unincorporated association; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.  C 07-03679 JSW<br><br>**DEFENDANT CELLCO PARTNERSHIP'S (D/B/A VERIZON WIRELESS) NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:  November 2, 2007<br>TIME:  9:00 a.m.<br>PLACE: Courtroom 2<br>JUDGE: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................... 1

RELIEF SOUGHT ...................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 2

II.   PLAINTIFF'S COMPLAINT ......................................................................... 3

III.  ARGUMENT ................................................................................................... 4

    A.    Applicable Legal Standards ................................................................ 4

    B.    The Ordinary Meaning of "Rate" Encompasses Verizon Wireless's Late
           Payment Charge ................................................................................. 5

    C.    Section 332's Reservation of State Authority Over "Other Terms and
           Conditions" Does Not Save Plaintiff's Claims ................................... 9

    D.    The Late Fee Is Part of Verizon Wireless's Rate Structure and Cannot Be
           Regulated by State Law ...................................................................... 12

IV.   CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Afridi v. Gonzales,*
  442 F.3d 1212 (9th Cir. 2006) ................................................................. 6

*Bastien v. AT&T Wireless Servs., Inc.,*
  205 F.3d 983  (7th Cir. 2000) ................................................................. 5

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ......................................................................... 4

*Benny v. U.S. Parole Comm'n,*
  295 F.3d 977 (9th Cir. 2002) ................................................................. 5

*Brown v. Washington/Baltimore Cellular,*
  109 F. Supp. 2d 421 (D. Md. 2000) ................................................... 11, 12

*Cairns v. Franklin Mint Co.,*
  292 F.3d 1139 (9th Cir. 2002) ............................................................... 5

*Cellco P'ship v. Hatch,*
  431 F.3d 1077 (8th Cir. 2005) ...................................................... 5, 7, 10

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ............................................................................. 7

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) ................................................................. 4

*Doe v. Mann,*
  415 F.3d 1038 (9th Cir. 2005) ............................................................... 9

*Gilmore v. Southwestern Bell Mobile Sys., Inc.,*
  156 F. Supp. 2d 916 (N.D. Ill. 2001) ........................................... 7, 10, 11

*In re Long Distance Telecomm. Litig.,*
  831 F.2d 627 (6th Cir. 1987) ................................................................. 9

*Kiefer v. Paging Network Inc.,*
  50 F. Supp. 2d 681 (E.D. Mich. 1999) ............................................ 11, 13

*National Ass'n of State Util. Consumer Advocates v. F.C.C.,*
  457 F.3d 1238 (11th Cir. 2006) .................................................. 6, 7, 9, 13

*Nixon v. Nextel West Corp.,*
  248 F. Supp. 2d 885 (E.D. Mo. 2003) ................................................... 9

*Russell v. Sprint Corp.,*
  264 F. Supp. 2d 955 (D. Kan. 2003) ..................................................... 9

*Siaperas v. Montana State Comp. Ins. Fund,*
  480 F.3d 1001 (9th Cir. 2007) ............................................................... 4

*United States v. Beaudion,*
  416 F.3d 965 (9th Cir. 2005) ................................................................. 6

*United States v. LeCoe,*
  936 F.2d 398 (9th Cir. 1991) ................................................................. 9

# TABLE OF AUTHORITIES
**(continued)**

Page

*United States v. Stewart,*
  420 F.3d 1007 (9th Cir. 2005) ............................................................................ 10

*Zimmerman v. Oregon Dep't of Justice,*
  170 F.3d 1169, (9th Cir.1999) ............................................................................ 6

## STATE CASES

*Ball v. GTE Mobilnet,*
  81 Cal. App. 4th 529, 537-38 (2000) ................................................................ 10

*Chiarella v. Sprint Spectrum LP,*
  921 So. 2d 106 (La. Ct. App. 2005) .................................................................... 5

*Spielholz v. Superior Court,*
  86 Cal. App. 4th 1366 (2001) ............................................................................. 9

*United Cable Television v. Burch,*
  732 A.2d 887 (Md. 1999) .................................................................................. 11

## FEDERAL STATUTES

47 U.S.C. § 332(c)(3)(A) ............................................................................... passim

## STATE STATUTES

220 Ill. Comp. Stat. 5/3-116 ................................................................................ 8

66 Pa. Con. Stat. Ann. § 102 ............................................................................... 8

Ark. Code Ann. § 23-1-101(10) ........................................................................... 8

Cal. Bus. & Prof. Code § 17200 .......................................................................... 4

Calif. Civ. Code §1671(d) ................................................................................... 4

Civil Code § 1750 ............................................................................................... 4

Ky. Rev. Stat. § 278.010(12) ............................................................................... 8

MD Code Ann., Pub. Util. Cos., § 1-101 ............................................................. 8

Minn. Stat. § 216B.02 .......................................................................................... 8

N.M. Stat. § 62-3-3(H) (1978) ............................................................................. 8

Tex. Util. Code Ann. § 101.003(12) .................................................................... 8

Wyo. Stat. Ann. 1977 § 37-1-102 ....................................................................... 8

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 4

# TABLE OF AUTHORITIES
**(continued)**

Page

## OTHER AUTHORITIES

H.R. Rep. No. 103-11, reprinted in 1993 U.S.C.C.A.N. 378.................................................. 8, 10

*In re Implementation of Sections 3(N) and 332 of the Communications Act,*
   *Regulatory Treatment of Mobile Services,*
   9 F.C.C.R. 1411 (1994)............................................................................................. 5

*In re Mountain Cable Company, dba Adelphia Cable Communications,*
   Nos. 6117, 6118, 6119, 1999 WL 628268 (Vt. Pub. Serv. Bd. May 3, 1999)......................... 8

*In re Southwestern Bell Mobile Sys., Inc.,*
   14 F.C.C.R. 19,898, ¶ 19 (1999) ....................................................................... 6, 12

1

## **NOTICE OF MOTION AND MOTION**

2

PLEASE TAKE NOTICE THAT on November 2, 2007 at 9:00 a.m. or as soon

3  thereafter as the matter may be heard, in the United States District Court, Northern District of

4  California, 450 Golden Gate Avenue, San Francisco, California, Courtroom 2, before the

5  Honorable Jeffrey S. White, Defendant Cellco Partnership (d/b/a Verizon Wireless) ("Verizon

6  Wireless") will and hereby does move to dismiss each Cause of Action asserted against it in

7  Plaintiff's Complaint on the ground that the Complaint fails to state a claim on which relief can

8  be granted.  This motion is based on this Notice of Motion and Motion, the accompanying

9  Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any

10  other matters as may be presented in reply papers or at the hearing.

11

## **RELIEF SOUGHT**

12

Defendant Verizon Wireless seeks dismissal of each claim asserted against it with

13  prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

14

## **STATEMENT OF ISSUES TO BE DECIDED**

15

Pursuant to Local Rule 7-4(a)(3), this Motion raises the following issue:

16

Whether each of Plaintiff's claims are preempted by 47 U.S.C. § 332(c)(3)(A),

17  which prohibits state regulation of the rates of wireless carriers such as Verizon Wireless.

18

19

20

21

22

23

24

25

26

27

28

- 1 -

DEFENDANT VERIZON WIRELESS'S
NOTICE OF MOT. AND MOT. TO DISMISS
C 07-03679 JSW

1
**MEMORANDUM OF POINTS AND AUTHORITIES**

2
**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3
           The complaint challenges the amount charged by Verizon Wireless for late

4
payments, alleging that the charge is excessive under standards set by California law.  Federal law

5
preempts this attempt to regulate Verizon Wireless's rates under state law.  In enacting section

6
332 of the Communications Act, Congress gave the Federal Communications Commission

7
("FCC") exclusive authority to regulate the rates charged by wireless service providers, such as

8
Verizon Wireless, and declared that "no State or local government shall have any authority to

9
regulate the . . . rates charged by any commercial mobile service . . ." 47 U.S.C. § 332(c)(3)(A).

10
           The ordinary meaning of the phrase "rates charged" plainly encompasses Verizon

11
Wireless's late payment charge.  The standard dictionary definition of a "rate," approved by

12
courts in interpreting section 332, includes any dollar amount charged in connection with the

13
provision of a service.  Verizon Wireless's late payment charge fits comfortably within this

14
definition.  When a customer fails to pay a bill by the due date, Verizon Wireless is forced to

15
extend credit to that customer for the late payment period.  The late payment fee is a charge for

16
this service and is calculated, in part, in relation to the amount of the customer's usage of other

17
services.  That is the textbook definition of a "rate," as courts have recognized.  While section

18
332 permits states to regulate "other terms and conditions" of wireless service, such as how

19
charges are presented on a consumer bill and other disclosure matters, the case law makes clear

20
that this exception does not extend to a claim, like that alleged in this case, that substantively

21
challenges the reasonableness of a wireless carrier's charges.

22
           Verizon Wireless's late payment charge is not only a rate, but also is part of the

23
company's rate *structure - i.e.*, the various ways through which a wireless carrier seeks to recover

24
its costs of providing service.  As the FCC has held, section 332 preempts the states from

25
regulating carriers' rate structure.  The Complaint acknowledges that Verizon Wireless incurs

26
additional costs when customers fail to pay their bills by the due date.  States are preempted from

27
dictating the particular means the carrier chooses to recover such costs.  For example, a state

28
could not prohibit a carrier from electing to recover the expected interest and collection costs

3481561.5

- 2 -

DEFENDANT VERIZON WIRELESS'S
NOTICE OF MOT. AND MOT. TO DISMISS
C 07-03679 JSW

1   from late payments by increasing the monthly service fees paid by all customers.  Nor can a state

2   regulate Verizon Wireless's decision to recoup these costs through a separately-assessed late

3   charge.

4          Accordingly, each of plaintiff's causes of action are preempted by federal law, and

5   the Court should dismiss the complaint with prejudice.

6   **II.    PLAINTIFF'S COMPLAINT**

7          Plaintiff's Complaint challenges Verizon Wireless's charge for a customer's

8   failure to pay the previous month's bill on time.  According to the Complaint, plaintiff entered

9   into an agreement with Verizon Wireless whereby she would pay $124.99 each month for mobile

10  phone services.  Complaint ¶ 13.  In addition to this base rate, the customer agreement provided

11  that plaintiff would pay other fees and charges.  *Id.*  One of these additional fees was a charge that

12  applies if a customer fails to pay her bill by the due date.  *Id.* ¶ 15.  The customer agreement

13  specifically stated that if plaintiff chose not to pay her full balance by the date indicated on a

14  particular bill, she would be assessed a late fee equal to 1.5 percent per month of the unpaid

15  balance or $5, whichever is greater.  *Id.*

16         Nowhere in her Complaint does plaintiff allege that she did not receive the

17  customer agreement disclosing this late fee, how it is calculated and when it applies.  To the

18  contrary, she admits that she entered into a two year agreement for wireless service (*id.* ¶ 12) and

19  quotes the relevant contractual provisions setting forth, in capitalized letters, the amount of the

20  charge and the circumstances under which it would apply.  *Id.* ¶ 15.  She does not contend that the

21  disclosure of the fee was insufficient in any respect.

22         In mid-December 2006, Plaintiff received a bill dated December 13, 2006, for

23  $131.59.  *Id.* ¶ 16.  In addition to the $124.99 monthly access fee, the bill also included a 30 cent

24  charge for additional data usage, and $6.60 in "additional fees, charges, and taxes."  *Id.*  The bill

25  was due on January 8, 2007; however, Plaintiff failed to pay the indicated amount.  *Id.* ¶¶ 16-17.

26  Pursuant to the terms of the Verizon Wireless Customer Agreement, a $5 late fee was added to

27  her next bill, which she then paid in full.  *Id.* ¶¶ 18-19.

28  / / /

3481561.5                          - 3 -          DEFENDANT VERIZON WIRELESS'S
                                                   NOTICE OF MOT. AND MOT. TO DISMISS
                                                   C 07-03679 JSW

1    Plaintiff asserts five causes of action based on these factual allegations.  First, she

2    alleges that the late charge violates California Civil Code section 1671(d), which limits the use of

3    liquidated damages provisions in consumer contracts.  Second, she alleges that Verizon Wireless

4    violated the California Consumers Legal Remedies Act, Civil Code sections 1750 *et seq.*, by

5    including an unlawful and unconscionable late fee provision in its customer agreements.  Third,

6    plaintiff alleges that because the late fee provision violates the Consumers Legal Remedies Act,

7    and because the late fee results in disproportionately high charges to customers with lower bills,

8    the provision is an unfair business practice, violating California Business and Professions Code

9    section 17200.  Fourth, plaintiff alleges a cause of action for unjust enrichment and seeks

10   restitution of the late fee.  Finally, she seeks a declaration that the $5 charge is illegal and

11   unenforceable, and an injunction prohibiting Verizon Wireless from including the late fee

12   provision in future contracts and from enforcing the provision in its current contracts.  Plaintiff

13   seeks certification of a class consisting of all California retail consumer customers of Verizon

14   Wireless who paid a $5 minimum late fee.  Plaintiff asserts no cause of action based on any

15   failure adequately to disclose the charge.

16   **III.    ARGUMENT**

17       **A.    Applicable Legal Standards**

18           To survive a motion to dismiss brought under Federal Rule of Civil Procedure

19   12(b)(6), a plaintiff must, assuming the truth of all the facts alleged in the complaint, show some

20   cognizable legal theory upon which relief can be granted.  *Siaperas v. Montana State Comp. Ins.*

21   *Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007).  However, the court "is not required to accept legal

22   conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

23   drawn from the facts alleged."  *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.

24   1994).  Moreover, the Supreme Court has recently cautioned that "a plaintiff's obligation to

25   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

26   and a formulaic recitation of a cause of action's elements will not do."  *Bell Atlantic Corp. v.*

27   *Twombly,* 127 S. Ct. 1955, 1959 (2007).  Under these standards, the Complaint must be dismissed

28   because the facts alleged reveal that plaintiff is challenging the rate Verizon Wireless is charging

1    its customers for the provision of service.  Because section 332 preempts such claims, she has

2    failed to state a claim on which relief can be granted, and the Complaint should be dismissed with

3    prejudice.

4    **B.    The Ordinary Meaning of "Rate" Encompasses Verizon Wireless's Late**
     **Payment Charge**

5

6    Section 332 of the Communications Act was enacted in its present form in 1993,

7    and was a key part of Congress's program to constrain state-by-state regulation of the wireless

8    communications industry so as to foster competition.  *See generally In re Implementation of*

9    *Sections 3(N) and 332 of the Communications Act, Regulatory Treatment of Mobile Services*, 9

10   F.C.C.R. 1411, 1417-19 (1994).  To advance these goals, Congress explicitly preempted any

11   effort by the states to regulate the rates charged by wireless carriers:

12             [N]o State or local government shall have any authority to regulate
               the entry of or the rates charged by any commercial mobile service
13             or any private mobile service, except that this paragraph shall not
               prohibit a State from regulating the other terms and conditions of
14             commercial mobile services.

15   47 U.S.C. § 332(c)(3)(A).  Hence, while section 332 does not affect states' authority to regulate

16   the "other terms and conditions" of the services offered by wireless carriers such as Verizon

17   Wireless, they are barred from interfering with the rates that these carriers charge.  Any challenge

18   to the reasonableness of a wireless carrier's rate is expressly preempted by federal law.  *See, e.g.,*

19   *Cellco P'ship v. Hatch*, 431 F.3d 1077, 1082 (8th Cir. 2005) (finding Minnesota statute requiring

20   that changes to a customer agreement take effect subject to a 60-day opt out period to be

21   preempted); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 988-90 (7th Cir. 2000) (finding

22   challenge to quality of service to be preempted by federal law); *Chiarella v. Sprint Spectrum LP*,

23   921 So. 2d 106, 118 (La. Ct. App. 2005) (finding challenges to performance of wireless network

24   to be preempted).

25   When interpreting a statute, the plain meaning of the statute controls.  *See Benny v.*

26   *U.S. Parole Comm'n*, 295 F.3d 977, 983 (9th Cir. 2002); *Cairns v. Franklin Mint Co.*, 292 F.3d

27   1139, 1147 (9th Cir. 2002).  Accordingly, where Congress does not specifically define a term,

28   courts will interpret that term "by employing the ordinary, contemporary, and common meaning

1  of the words that Congress used." *Afridi v. Gonzales*, 442 F.3d 1212, 1215 (9th Cir. 2006)

2  (quoting *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1174 (9th Cir.1999)); *see also*

3  *United States v. Beaudion*, 416 F.3d 965, 969 (9th Cir. 2005).

4          The ordinary meaning of "rates charged" is a dollar amount charged in connection

5  with the provision of a service.  As the Eleventh Circuit Court of Appeals stated in a recent

6  decision interpreting section 332, "[a] 'rate,' as defined in the dictionary and previous decisions

7  by the [FCC], is '[t]he amount of a charge or payment.'"  *National Ass'n of State Util. Consumer*

8  *Advocates v. F.C.C.*, 457 F.3d 1238, 1258 (11th Cir. 2006) ("*NASUCA*") (quoting Oxford English

9  Dictionary (2d ed. 1989) and citing *In re Southwestern Bell Mobile Sys., Inc.*, 14 F.C.C.R. 19,898,

10  ¶ 19 (1999).  In *NASUCA*, the Court reviewed an order by the FCC that found that section 332

11  preempted state regulation of "line-item billing," *i.e.*, using a discrete charge identified separately

12  on an end user's bill.  457 F.3d at 1241.  To determine whether the FCC acted within its authority

13  in issuing this regulation, the Eleventh Circuit considered whether line items were "rates charged"

14  within the meaning of section 332, focusing on the "ordinary, contemporary, common meaning"

15  of the phrase.  *Id.* at 1254.  The Court stated:

16          A 'rate' as defined by the Oxford English Dictionary, is '[t]he
            amount of a charge or payment . . . having relation to some other
17          amount or basis of calculation.' [citation].  Other dictionaries define
            a 'rate' as '[a]n amount paid or charged for a good or service,'
18          Black's Law Dictionary 1268 (7th ed. 1999), or 'a charge per unit
            of a public-service commodity,' Merriam-Webster Online
19          Dictionary, *available* at www.m-w.com/cgi-bin/dictionary.

20  *Id.*

21          Applying this definition, the Court found that "the prohibition or requirement of a

22  line item affects the *presentation* of the charge on the user's bill, but it does not affect the *amount*

23  that a user is charged for service," and that, as a result, line items did not qualify as "rates" within

24  the meaning of section 332.  *Id.* (emphasis added); *see also id.* at 1255 (state regulations at issue

25  "do not require a carrier to recover nor prohibit a carrier from recovering a particular cost" but

26  "pertain only to the presentation of that cost on customer bills.").  Thus, the Court confirmed that

27  section 332 preempts state interference with the amount of a charge or recovery of a cost by

28  wireless carriers, while permitting state regulation of how such a charge must appear on a

3481561.5                                   - 6 -        DEFENDANT VERIZON WIRELESS'S
                                                         NOTICE OF MOT. AND MOT. TO DISMISS
                                                         C 07-03679 JSW

customer bill.  The Eleventh Circuit's refusal to accept the FCC's interpretation of the word

"rate" is significant because, as the Court recognized, under *Chevron USA, Inc. v. Natural*

*Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the FCC's interpretation is to be given

"controlling weight" if the statute were deemed ambiguous.  *NASUCA*, 457 F.3d at 1253 (internal

quotation marks and citations omitted).  The Eleventh Circuit's refusal to do so reflects the fact

that the ordinary meaning of the word "rate" is clear and unambiguous.

Verizon Wireless's late payment fee is a "rate" under this definition because it is a

charge or payment for a service.  Most immediately, it is a charge for the service of extending

credit to a customer beyond the due date for a bill.  It is also a charge for wireless service because

it is a "charge or payment" both "having relation to" and a "basis of calculation" in the amount of

wireless service usage, *i.e.* the size of the bill.  *Id.* at 1254.  While there is a minimum amount, the

amount of the charge varies with the unpaid balance on the customers' wireless bill.  In any event,

the precise characterization of the charge - whether it is for credit service, wireless service or both

- is immaterial because section 332's prohibition on state regulation, by its plain terms, extends to

*all* "rates charged *by* any commercial mobile service."  47 U.S.C. § 332(c)(3)(A) (emphasis

added).  Under this language, what matters is that the charge is assessed by a commercial mobile

service, such as Verizon Wireless,[1] rather than the type of service for which the charge is

imposed.  *See Gilmore v. Southwestern Bell Mobile Sys., Inc.*, 156 F. Supp. 2d 916, 919 (N.D. Ill.

2001) (holding that a state law claim challenging a wireless carrier's "Corporate Account

Administration Fee," which plaintiffs claimed were levied without provision of any additional

services was preempted by section 332).  Verizon Wireless's late payment fee is undoubtedly an

amount charged for a service by a commercial mobile service and lies within the scope of section

332, unlike the line items considered in *NASUCA* which the FCC found "cannot be attributed to"

any service or product.  *NASUCA*, 457 F.3d at 1255.

This conclusion is confirmed by state statutory definitions of rate in the utility

context.  State regulatory statutes employ a broad definition of the term "rate" that is consistent

---

[1] It is well-established that "a commercial mobile service" refers to wireless service providers including Verizon Wireless.  *See Cellco P'ship*, 431 F.3d at 1080.

DEFENDANT VERIZON WIRELESS'S
NOTICE OF MOT. AND MOT. TO DISMISS
C 07-03679 JSW

with the common understanding of rate described above, *i.e.*, any and all charge or compensation assessed by a public utility for service. *See e.g.*, 220 Ill. Comp. Stat. 5/3-116 (defining "rate" under Illinois law as "includ[ing] *every . . . charge . . or other compensation* of any public utility . . . ") (emphasis added); Ark. Code Ann. § 23-1-101(10) (providing that "'[r]ate' means and includes *every compensation*, charge, fare, toll, rental, and classification, or any of them, demanded, observed, charged, or *collected by any public utility for any service*, products, or commodity offered by it as a public utility to the public . . .") (emphasis added); MD Code Ann., Pub. Util. Cos., § 1-101; Tex. Util. Code Ann. § 101.003(12); N.M. Stat. § 62-3-3(H) (1978); Minn. Stat. § 216B.02, subd. 5; 66 Pa. Con. Stat. Ann. § 102; Wyo. Stat. Ann. 1977 § 37-1-102; Ky. Rev. Stat. § 278.010(12); N.C. Gen. Stat. Ann. § 62-3(24). These definitions of the term rate would clearly include a late fee such as that being challenged by plaintiffs. Indeed, in *In re Mountain Cable Company, dba Adelphia Cable Communications*, Nos. 6117, 6118, 6119, 1999 WL 628268 (Vt. Pub. Serv. Bd. May 3, 1999), the Vermont Public Service Board invoked its statutory authority to "remedy unjust or unreasonable *rates* [and to] order[] refunds for excessive *rates*" to order a cable company to refund certain late fees to customers. *Id.* at section entitled Late Fees, Board Authority to Regulate Fees for Late Payment (emphasis added). The Board noted that "the Vermont Legislature has given the Board the authority to regulate all *rates* for cable television systems to the full extent that federal law allows" and expressed "*no doubt* that 'late fees' as fees, are among such *rates* . . ."). *Id.* at section entitled Board Discussion, subsection B, Adelphia's Comments, subpart 10 (emphasis added).

That existing state law defines a "rate" to include any and all charges, including late payment charges, is highly significant in interpreting section 332. In enacting section 332, Congress intended "[t]o foster the growth and development of mobile services that, by their nature, operate *without regard to state lines* as an integral part of the *national* telecommunications infrastructure," and to preempt traditional state utility regulation which Congress viewed as standing in the way of that goal. H.R. Rep. No. 103-11, *reprinted in* 1993 U.S.C.C.A.N. 378, 587 (emphasis added). It did so by using the very same word "rate" that states have used to regulate all charges and other compensation assessed by public utilities. It would be highly incongruous

- 8 -

DEFENDANT VERIZON WIRELESS'S
NOTICE OF MOT. AND MOT. TO DISMISS
C 07-03679 JSW

1   for Congress to have preempted state regulation of "rates" while preserving state jurisdiction over

2   a charge that clearly falls within existing state law definitions of a "rate."  A contrary

3   interpretation would violate the cannon of statutory construction that "Congress is, of course,

4   presumed to know existing law pertinent to any new legislation it enacts."  *United States v.*

5   *LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991); *see also Doe v. Mann*, 415 F.3d 1038, 1046 (9th Cir.

6   2005) ("[i]f Congress did not seek to have [existing] principles applied to the interpretation of

7   [new statute], we presume that it would have said so.").

8       **C.    Section 332's Reservation of State Authority Over "Other Terms and
         Conditions" Does Not Save Plaintiff's Claims**

9

10          The last clause of section 332, which provides that the statute does not "prohibit a

11  State from regulating the other terms and conditions of commercial mobile services," 47 U.S.C. §

12  332(c)(3)(A), does not apply to plaintiff's claims .  Given the statute's express preemption of state

13  regulation of rates and entry, the savings clause can only be read to preserve state authority over

14  terms and conditions *other than* rates and entry.

15          The last clause of section 332 has generally been interpreted to permit state-law

16  claims premised on inadequate disclosures. *See e.g., Nixon v. Nextel West Corp.*, 248 F. Supp. 2d

17  885, 892 (E.D. Mo. 2003); *Spielholz v. Superior Court*, 86 Cal. App. 4th 1366, 1375 (2001);

18  *Russell v. Sprint Corp.*, 264 F. Supp. 2d 955, 962 (D. Kan. 2003); *Cf. In re Long Distance*

19  *Telecomm. Litig.*, 831 F.2d 627 (6th Cir. 1987).  The *NASUCA* decision is a recent example of

20  this line of authority holding that "[b]ecause the *presentation* of line items on a bill is not a

21  'charge or payment' for service, Oxford English Dictionary (2d ed. 1989), it is an 'other term or

22  condition' regulable by states." 457 F.3d at 1254 (emphasis added).  This line of authority is

23  consistent with the legislative history of the statute, where the House Budget Committee report

24  stated:

25          By "terms and conditions," the Committee intends to include such
            matters as *customer billing information and practices and billing*
26          *disputes* and other consumer protection matters; facilities siting
            issues (e.g., zoning); transfers of control; the bundling of services
27          and equipment; and the requirement that carriers make capacity
            available on a wholesale basis or such other matters as fall within a
28          state's lawful authority.  This list is intended to be illustrative only

1    and not meant to preclude other matters generally understood to fall
2    under "terms and conditions."

3    H.R. Rep. No. 103-111, at 261, *reprinted in* 1993 U.S.C.C.A.N. at 588 (emphasis added) .[2]

4    Courts have also cautioned that "[t]o avoid subsuming the regulation of rates within the

5    governance of 'terms and conditions,' the meaning of 'consumer protection'" as used in the

6    Committee Report "must exclude regulatory measures . . . that directly impact the rates charged

7    by providers." *Cellco P'ship*, 431 F.3d at 1083. Thus, challenges to the reasonableness of a

8    wireless carrier's charges cannot be regarded as the regulation of "other terms and conditions."

9         *Gilmore* involved just such a challenge and is similar to the facts of this case. In

10    *Gilmore*, plaintiffs challenged the defendant carrier's account administration fee as not justified

11    by any additional services and levied "for the sole purpose of enabling [defendant] to generate

12    more revenue without appearing to raise its rates for cellular service." 156 F. Supp. 2d at 919. In

13    ruling that the claims related to this fee were preempted by section 332, the district court

14    concluded:

15        Plaintiff's contract allegations explicitly raise the issue of whether it
       received sufficient services in return for the Fee. That is a rate
16        issue. Also, alleging that the Fee is unconscionable and that
       defendant did not act in good faith are allegations that the Fee is
17        unjust and/or unreasonable.

18    *Id.* at 924 (internal citations omitted). The Court distinguished claims that were based on the

19    defendant's alleged failure to disclose the fee, noting that "[s]uccess on the nondisclosure fraud

20    claim would not require proof that the Fee was unreasonably high or unjustified in light of any

21    new services provided in return." *Id.* As a result, these claims were not preempted by section

22    332. *See also Ball v. GTE Mobilnet*, 81 Cal. App. 4th 529, 537-38 (2000) (allowing claims that

23    defendant failed to disclose practice of rounding up to the next full minute of use for billing

24    purposes to stand while finding that claims that "attack the reasonableness of the method by

25

26    _____

27    [2] Given that the plain meaning of the text of section 332 clearly encompasses late payment
       charges, resort to legislative history is unnecessary. *United States v. Stewart*, 420 F.3d 1007,
       1020 (9th Cir. 2005). The legislative history nonetheless confirms that Congress was primarily
28    concerned with information practices when it enacted the saving clause of section 332.

- 10 -
DEFENDANT VERIZON WIRELESS'S
NOTICE OF MOT. AND MOT. TO DISMISS
C 07-03679 JSW

1    which the defendants calculate the length" and therefore "direct[ly] challenge to the rates charged

2    by the defendants for cellular phone service "are preempted by section 332).

3            As the *Gilmore* court aptly observed, "[t]he key focus" in the case law is "whether

4    the validity of the [rate] had to be determined to resolve the claim." 156 F. Supp. 2d at 922. In

5    this case, plaintiffs' claims *would* require a determination of whether Verizon Wireless's charges

6    are valid or are instead "unreasonable, unjust, or otherwise inappropriate." *See id.* at 923. Each

7    of plaintiff's claims depends upon a finding that the late charge is unconscionable or void under

8    California law. As the *Gilmore* court recognized, these claims depend on whether the amount

9    Verizon Wireless charges is reasonable and are preempted by section 332. *See also Kiefer v.*

10    *Paging Network Inc.*, 50 F. Supp. 2d 681, 685 (E.D. Mich. 1999) (rejecting plaintiff's claim that

11    late payment fee for a paging service should be "construed as a . . . 'term and condition'" rather

12    than as a "charge" and staying claim in deference to the FCC under the doctrine of primary

13    jurisdiction.).

14            One district court has concluded that a late fee is a "term or condition" that may be

15    regulated by the states. *See Brown v. Washington/Baltimore Cellular*, 109 F. Supp. 2d 421 (D.

16    Md. 2000). The *Brown* court's reasoning is unpersuasive and its conclusion flawed. In

17    concluding in a single paragraph that "late fees are not included in 'rates' of service, but rather

18    are part of the 'other terms and conditions' of service" (*id.* at 423), the *Brown* court did not

19    analyze the ordinary meaning of the term, any cases interpreting section 332, or any other

20    authority that might shed light on the meaning of the statute. Rather, the only case cited by the

21    district court was *United Cable Television v. Burch*, 732 A.2d 887 (Md. 1999), which is wholly

22    inapposite.

23            In *Burch*, the Maryland Supreme Court held that a cable company's late fee

24    exceeded the legal rate of interest of 6 percent and was therefore void under Maryland law.[3] The

---

[3]  Verizon Wireless vigorously disputes that its late payment charge is unconscionable or
unreasonable under state law, if state law were permitted to apply. As the *Brown* court notes, 109
F. Supp. 2d at 422, the Maryland Legislature enacted a statute, in response to the holding in
*Burch*, specifically to overturn the holding of *Burch* and permit late fees of "either (1) 1.5% per
month of the amount due; or (2) $5 or 10% per month of the amount due, whichever is greater,
for a maximum of three months," *i.e.*, an amount similar to and potentially greater than Verizon
Wireless's late payment charge. *Cf.* Complaint ¶ 15 (late payment rate at 1.5% per month of the

- 11 -                DEFENDANT VERIZON WIRELESS'S
                                                                    NOTICE OF MOT. AND MOT. TO DISMISS
                                                                    C 07-03679 JSW

1  Maryland Supreme Court had no occasion to and did not consider whether the late payment fee

2  was part of the defendant cable operator's "rate" or some other "term or condition": section 332

3  does not apply to cable operators, and these statutory concepts had no relevance to the claim at

4  hand.  From the *Burch* court's conclusion that late fees are a "form of liquidated damages for

5  failure to pay bills on time," the *Brown* court made the leap to the conclusion that, therefore, they

6  are not "rates."  *Brown*, 109 F. Supp. 2d at 423 & n.1.  But this reasoning has no support in logic

7  or the statutory language.  A charge that is claimed to be an unreasonable liquidated damages

8  provision can still be a "rate" within the plain meaning of the statute.  As discussed above, a rate

9  is simply a monetary charge for a service.  Verizon Wireless's late payment charge is a charge for

10 wireless service and/or for the service of providing credit beyond the bill's due date and

11 comfortably fits within the statutory definition of a "rate."  The *Brown* court erred in ignoring the

12 language of the statute and relying on a case that did not even address the statute.

13     **D.     The Late Fee Is Part of Verizon Wireless's Rate Structure and Cannot Be**
            **Regulated by State Law**
14

15            In addition to being a "rate," Verizon Wireless's late payment charge is also part

16 of the company's "rate structure"—that is, the chosen mechanism by which Verizon Wireless

17 seeks to recover a portion of its costs.  Section 332 also preempts the application of state law to

18 challenge the reasonableness of a wireless carrier's rate structure.

19            The FCC has held that section 332's prohibition on state regulation of rates

20 extends to both the level of a rate and its structure.  The FCC found "that the term 'rates charged'

21 in Section 332(c)(3)(A) may include both rate levels and rate structures for [commercial mobile

22 radio service] and that the states are precluded from regulating either of these."  *In re*

23 *Southwestern Bell*, 14 F.C.C.R. 19,898, ¶ 20.  Accordingly, "states not only may not prescribe

24 how much may be charged for these services, but also may not prescribe the rate elements for

25 CMRS."  *Id.*  This means that a state is prohibited not only from declaring a particular element of

26 wireless carrier's rates unreasonable but also from attempting to dictate how a wireless carrier

27

28 amount due or $5, whichever is greater).

3481561.5                        DEFENDANT VERIZON WIRELESS'S
                                 NOTICE OF MOT. AND MOT. TO DISMISS
                                 C 07-03679 JSW

1    may structure its rates - *i.e.*, through what particular combination of fees a wireless carrier may

2    seek to recover its costs of providing service.

3    The district court in *Kiefer*, 50 F. Supp. 2d at 685, in rejecting the plaintiff's

4    argument that a late payment charge is "merely a 'term and condition' of the parties' service

5    contract," explained the rationale for viewing such charges as part of the "overall rate structure

6    for paging services."

7    > Plaintiff's argument ignores the fact that a service provider's overall
       rate structure can take several forms; i.e., it can spread the costs of
8    > untimely payments among its customers by charging everyone an
       increased rate, or it can include in its overall rate structure a
9    > separate charge for untimely payments that are to be imposed solely
       on those customers who fail to timely pay their bills.  Defendant
10   > chose the latter of these two options to be included in its overall rate
       structure.
11

12   *Id.* at 685.  While a state law does not regulate rates merely because it imposes additional

13   compliance costs that may be passed through to consumers in the form of higher charges, *see*

14   *NASUCA*, 457 F.3d at 1256, a state does regulate rates when it seeks to regulate how a carrier

15   recovers its pre-existing costs of doing business.

16   Plaintiffs' claims fall squarely within the prohibition on regulation of rate

17   structures.  As the plaintiff concedes, Verizon Wireless incurs a real cost when a customer does

18   not pay his or her balance by the date indicated on the bill.  Complaint ¶ 21 (alleging that the late

19   fee amount exceeds Verizon Wireless's "carrying costs").  Verizon Wireless incurs further costs

20   in attempting to collect late payments.  Verizon Wireless also incurs various other costs of doing

21   business.  States cannot dictate the particular charges that Verizon Wireless chooses to utilize to

22   recover any of these costs.  Just as a state cannot prohibit a wireless carrier from seeking to

23   recover credit and collection costs in a base monthly charge, in a service activation charge, or in

24   an account maintenance charge, so too the state cannot regulate a carrier's choice to recover such

25   costs through a late charge.  As the *Kiefer* court properly concluded, a late payment charge is a

26   part of the carrier's "overall rate structure," and states cannot limit carrier's ability to establish

27   such charges on the grounds that they are unreasonable.

28

1

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's Complaint with

prejudice.

DATED: August 22, 2007                        Munger, Tolles & Olson LLP
                                               HENRY WEISSMANN
                                               HOJOON HWANG
                                               DANIEL J. POWELL


By:_____
                                                   HOJOON HWANG

Attorneys for Defendant
CELLCO PARTNERSHIP (D/B/A VERIZON
WIRELESS)

3481561.5

- 14 -