HENRY WEISSMANN (SBN 132418)
Henry.Weissmann@mto.com
HOJOON HWANG (SBN 184950)
Hojoon.Hwang@mto.com
DANIEL J. POWELL (SBN 230304)
Daniel.Powell@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Defendant
CELLCO PARTNERSHIP (D/B/A VERIZON WIRELESS)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CATHERINE GELLIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIZON COMMUNICATIONS, INC., a Delaware Corporation; VERIZON WIRELESS, an unincorporated association; CELLCO PARTNERSHIP, an unincorporated association; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.  C 07-03679 JSW<br><br>**DEFENDANT CELLCO PARTNERSHIP'S (D/B/A VERIZON WIRELESS) NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:  November 2, 2007<br>TIME:  9:00 a.m.<br>PLACE: Courtroom 2<br>JUDGE: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

|   | Page |
|---|---|
| NOTICE OF MOTION AND MOTION | 1 |
| RELIEF SOUGHT | 1 |
| STATEMENT OF ISSUES TO BE DECIDED | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| I. INTRODUCTION AND SUMMARY OF ARGUMENT | 2 |
| II. PLAINTIFF'S COMPLAINT | 3 |
| III. ARGUMENT | 4 |
|     A. Applicable Legal Standards | 4 |
|     B. The Ordinary Meaning of "Rate" Encompasses Verizon Wireless's Late Payment Charge | 5 |
|     C. Section 332's Reservation of State Authority Over "Other Terms and Conditions" Does Not Save Plaintiff's Claims | 9 |
|     D. The Late Fee Is Part of Verizon Wireless's Rate Structure and Cannot Be Regulated by State Law | 12 |
| IV. CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Afridi v. Gonzales,*
  442 F.3d 1212 (9th Cir. 2006) ............................................................................................. 6

*Bastien v. AT&T Wireless Servs., Inc.,*
  205 F.3d 983 (7th Cir. 2000) .............................................................................................. 5

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) ....................................................................................................... 4

*Benny v. U.S. Parole Comm'n,*
  295 F.3d 977 (9th Cir. 2002) .............................................................................................. 5

*Brown v. Washington/Baltimore Cellular,*
  109 F. Supp. 2d 421 (D. Md. 2000) ............................................................................ 11, 12

*Cairns v. Franklin Mint Co.,*
  292 F.3d 1139 (9th Cir. 2002) ............................................................................................ 5

*Cellco P'ship v. Hatch,*
  431 F.3d 1077 (8th Cir. 2005) ................................................................................... 5, 7, 10

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ........................................................................................................... 7

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) ................................................................................................ 4

*Doe v. Mann,*
  415 F.3d 1038 (9th Cir. 2005) ............................................................................................ 9

*Gilmore v. Southwestern Bell Mobile Sys., Inc.,*
  156 F. Supp. 2d 916 (N.D. Ill. 2001) ...................................................................... 7, 10, 11

*In re Long Distance Telecomm. Litig.,*
  831 F.2d 627 (6th Cir. 1987) .............................................................................................. 9

*Kiefer v. Paging Network Inc.,*
  50 F. Supp. 2d 681 (E.D. Mich. 1999) ........................................................................ 11, 13

*National Ass'n of State Util. Consumer Advocates v. F.C.C.,*
  457 F.3d 1238 (11th Cir. 2006) ................................................................................ 6, 7, 9, 13

*Nixon v. Nextel West Corp.,*
  248 F. Supp. 2d 885 (E.D. Mo. 2003) ................................................................................ 9

*Russell v. Sprint Corp.,*
  264 F. Supp. 2d 955 (D. Kan. 2003) .................................................................................. 9

*Siaperas v. Montana State Comp. Ins. Fund,*
  480 F.3d 1001 (9th Cir. 2007) ............................................................................................ 4

*United States v. Beaudion,*
  416 F.3d 965 (9th Cir. 2005) .............................................................................................. 6

*United States v. LeCoe,*
  936 F.2d 398 (9th Cir. 1991) .............................................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Stewart,*
  420 F.3d 1007 (9th Cir. 2005) .................................................................................. 10

*Zimmerman v. Oregon Dep't of Justice,*
  170 F.3d 1169, (9th Cir.1999) .................................................................................. 6

**STATE CASES**

*Ball v. GTE Mobilnet,*
  81 Cal. App. 4th 529, 537-38 (2000) ....................................................................... 10

*Chiarella v. Sprint Spectrum LP,*
  921 So. 2d 106 (La. Ct. App. 2005) .......................................................................... 5

*Spielholz v. Superior Court,*
  86 Cal. App. 4th 1366 (2001) .................................................................................... 9

*United Cable Television v. Burch,*
  732 A.2d 887 (Md. 1999) ........................................................................................ 11

**FEDERAL STATUTES**

47 U.S.C. § 332(c)(3)(A) ................................................................................................ passim

**STATE STATUTES**

220 Ill. Comp. Stat. 5/3-116 ............................................................................................... 8

66 Pa. Con. Stat. Ann. § 102 .............................................................................................. 8

Ark. Code Ann. § 23-1-101(10) ......................................................................................... 8

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 4

Calif. Civ. Code §1671(d) .................................................................................................. 4

Civil Code § 1750 .............................................................................................................. 4

Ky. Rev. Stat. § 278.010(12) ............................................................................................. 8

MD Code Ann., Pub. Util. Cos., § 1-101 ........................................................................... 8

Minn. Stat. § 216B.02 ........................................................................................................ 8

N.M. Stat. § 62-3-3(H) (1978) ........................................................................................... 8

Tex. Util. Code Ann. § 101.003(12) .................................................................................. 8

Wyo. Stat. Ann. 1977 § 37-1-102 ...................................................................................... 8

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4

# TABLE OF AUTHORITIES
(continued)

Page

### OTHER AUTHORITIES

H.R. Rep. No. 103-11, reprinted in 1993 U.S.C.C.A.N. 378 .................................................. 8, 10

*In re Implementation of Sections 3(N) and 332 of the Communications Act, Regulatory Treatment of Mobile Services,*
9 F.C.C.R. 1411 (1994) .............................................................................................................. 5

*In re Mountain Cable Company, dba Adelphia Cable Communications,*
Nos. 6117, 6118, 6119, 1999 WL 628268 (Vt. Pub. Serv. Bd. May 3, 1999) ........................... 8

*In re Southwestern Bell Mobile Sys., Inc.,*
14 F.C.C.R. 19,898, ¶ 19 (1999) ......................................................................................... 6, 12

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on November 2, 2007 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Courtroom 2, before the Honorable Jeffrey S. White, Defendant Cellco Partnership (d/b/a Verizon Wireless) ("Verizon Wireless") will and hereby does move to dismiss each Cause of Action asserted against it in Plaintiff's First Amended Complaint on the ground that the First Amended Complaint fails to state a claim on which relief can be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any other matters as may be presented in reply papers or at the hearing.

## RELIEF SOUGHT

Defendant Verizon Wireless seeks dismissal of each claim asserted against it with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3), this Motion raises the following issue:

Whether each of Plaintiff's claims are preempted by 47 U.S.C. § 332(c)(3)(A), which prohibits state regulation of the rates of wireless carriers such as Verizon Wireless.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Like the original complaint, the First Amended Complaint ("FAC") challenges the amount charged by Verizon Wireless for late payments, alleging that the charge is excessive under standards set by California law. Federal law preempts this attempt to regulate Verizon Wireless's rates under state law. In enacting section 332 of the Communications Act, Congress gave the Federal Communications Commission ("FCC") exclusive authority to regulate the rates charged by wireless service providers, such as Verizon Wireless, and declared that "no State or local government shall have any authority to regulate the . . . rates charged by any commercial mobile service . . ." 47 U.S.C. § 332(c)(3)(A). The FAC contains no substantive changes from Plaintiff's original complaint, and the material allegations are taken verbatim from the original complaint. Indeed, no amount of amendment could change the nature of the late payment charge or affect the application of the language of section 332. Plaintiff continues to challenge Verizon Wireless's rates under state law, and this challenge is barred by federal law.

The ordinary meaning of the phrase "rates charged" plainly encompasses Verizon Wireless's late payment charge. The standard dictionary definition of a "rate," approved by courts in interpreting section 332, includes any dollar amount charged in connection with the provision of a service. Verizon Wireless's late payment charge fits comfortably within this definition. When a customer fails to pay a bill by the due date, Verizon Wireless is forced to extend credit to that customer for the late payment period. The late payment fee is a charge for this service and is calculated, in part, in relation to the amount of the customer's usage of other services. That is the textbook definition of a "rate," as courts have recognized. While section 332 permits states to regulate "other terms and conditions" of wireless service, such as how charges are presented on a consumer bill and other disclosure matters, the case law makes clear that this exception does not extend to a claim, like that alleged in this case, that substantively challenges the reasonableness of a wireless carrier's charges.

Verizon Wireless's late payment charge is not only a rate, but also is part of the company's rate *structure* - *i.e.*, the various ways through which a wireless carrier seeks to recover

- 2 -

DEF. VERIZON WIRELESS'S NOTICE OF
MOT. AND MOT. TO DISMISS FAC
C 07-03679 JSW

its costs of providing service. As the FCC has held, section 332 preempts the states from regulating carriers' rate structure. The FAC acknowledges that Verizon Wireless incurs additional costs when customers fail to pay their bills by the due date. States are preempted from dictating the particular means the carrier chooses to recover such costs. For example, a state could not prohibit a carrier from electing to recover the expected interest and collection costs from late payments by increasing the monthly service fees paid by all customers. Nor can a state regulate Verizon Wireless's decision to recoup these costs through a separately-assessed late charge.

Accordingly, each of plaintiff's causes of action are preempted by federal law, and the Court should dismiss the complaint with prejudice.

## II.    PLAINTIFF'S COMPLAINT

Plaintiff's FAC challenges Verizon Wireless's charge for a customer's failure to pay the previous month's bill on time. According to the FAC, plaintiff entered into an agreement with Verizon Wireless whereby she would pay $124.99 each month for mobile phone services. FAC ¶ 15. In addition to this base rate, the customer agreement provided that plaintiff would pay other fees and charges. *Id.* ¶ 14 One of these additional fees was a charge that applies if a customer fails to pay her bill by the due date. *Id.* The customer agreement specifically stated that if plaintiff chose not to pay her full balance by the date indicated on a particular bill, she would be assessed a late fee equal to 1.5 percent per month of the unpaid balance or $5, whichever is greater. *Id.*

Nowhere in her FAC does plaintiff allege that she did not receive the customer agreement disclosing this late fee, how it is calculated and when it applies. To the contrary, she admits that she entered into a two year agreement for wireless service (*id.* ¶ 12) and quotes the relevant contractual provisions setting forth, in capitalized letters, the amount of the charge and the circumstances under which it would apply. *Id.* ¶ 14. She does not contend that the disclosure of the fee was insufficient in any respect.

In mid-December 2006, Plaintiff received a bill dated December 13, 2006, for $131.59. *Id.* ¶ 17. In addition to the $124.99 monthly access fee, the bill also included a 30 cent

charge for additional data usage, and $6.60 in "additional fees, charges, and taxes." *Id.* The bill was due on January 8, 2007; however, Plaintiff failed to pay the indicated amount. *Id.* Pursuant to the terms of the Verizon Wireless Customer Agreement, a $5 late fee was added to her next bill, which she then paid in full. *Id.* ¶¶ 18-19.

Plaintiff asserts five causes of action based on these factual allegations. First, she alleges that the late charge violates California Civil Code section 1671(d), which limits the use of liquidated damages provisions in consumer contracts. Second, she alleges that Verizon Wireless violated the California Consumers Legal Remedies Act, Civil Code sections 1750 et seq., by including an unlawful and unconscionable late fee provision in its customer agreements. Third, plaintiff alleges that because the late fee provision violates the Consumers Legal Remedies Act, and because the late fee results in disproportionately high charges to customers with lower bills, the provision is an unfair business practice, violating California Business and Professions Code section 17200. Fourth, plaintiff alleges a cause of action for unjust enrichment and seeks restitution of the late fee. Finally, she seeks a declaration that the $5 charge is illegal and unenforceable, and an injunction prohibiting Verizon Wireless from including the late fee provision in future contracts and from enforcing the provision in its current contracts. Plaintiff seeks certification of a class consisting of all California retail consumer customers of Verizon Wireless who paid a $5 minimum late fee. Plaintiff asserts no cause of action based on any failure adequately to disclose the charge.

### III. ARGUMENT

#### A. Applicable Legal Standards

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must, assuming the truth of all the facts alleged in the complaint, show some cognizable legal theory upon which relief can be granted. *Siaperas v. Montana State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007). However, the court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Moreover, the Supreme Court has recently cautioned that "a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007). Under these standards, the FAC must be dismissed because the facts alleged reveal that plaintiff is challenging the rate Verizon Wireless is charging its customers for the provision of service. Because section 332 preempts such claims, she has failed to state a claim on which relief can be granted, and the FAC should be dismissed with prejudice.

### B. The Ordinary Meaning of "Rate" Encompasses Verizon Wireless's Late Payment Charge

Section 332 of the Communications Act was enacted in its present form in 1993, and was a key part of Congress's program to constrain state-by-state regulation of the wireless communications industry so as to foster competition. *See generally In re Implementation of Sections 3(N) and 332 of the Communications Act, Regulatory Treatment of Mobile Services*, 9 F.C.C.R. 1411, 1417-19 (1994). To advance these goals, Congress explicitly preempted any effort by the states to regulate the rates charged by wireless carriers:

> [N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. § 332(c)(3)(A). Hence, while section 332 does not affect states' authority to regulate the "other terms and conditions" of the services offered by wireless carriers such as Verizon Wireless, they are barred from interfering with the rates that these carriers charge. Any challenge to the reasonableness of a wireless carrier's rate is expressly preempted by federal law. *See, e.g., Cellco P'ship v. Hatch*, 431 F.3d 1077, 1082 (8th Cir. 2005) (finding Minnesota statute requiring that changes to a customer agreement take effect subject to a 60-day opt out period to be preempted); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 988-90 (7th Cir. 2000) (finding challenge to quality of service to be preempted by federal law); *Chiarella v. Sprint Spectrum LP*, 921 So. 2d 106, 118 (La. Ct. App. 2005) (finding challenges to performance of wireless network to be preempted).

1    When interpreting a statute, the plain meaning of the statute controls. *See Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 983 (9th Cir. 2002); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1147 (9th Cir. 2002). Accordingly, where Congress does not specifically define a term, courts will interpret that term "by employing the ordinary, contemporary, and common meaning of the words that Congress used." *Afridi v. Gonzales*, 442 F.3d 1212, 1215 (9th Cir. 2006) (quoting *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1174 (9th Cir.1999)); *see also United States v. Beaudion*, 416 F.3d 965, 969 (9th Cir. 2005).

The ordinary meaning of "rates charged" is a dollar amount charged in connection with the provision of a service. As the Eleventh Circuit Court of Appeals stated in a recent decision interpreting section 332, "[a] 'rate,' as defined in the dictionary and previous decisions by the [FCC], is '[t]he amount of a charge or payment.'" *National Ass'n of State Util. Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1258 (11th Cir. 2006) ("*NASUCA*") (quoting Oxford English Dictionary (2d ed. 1989) and citing *In re Southwestern Bell Mobile Sys., Inc.*, 14 F.C.C.R. 19,898, ¶ 19 (1999). In *NASUCA*, the Court reviewed an order by the FCC that found that section 332 preempted state regulation of "line-item billing," *i.e.*, using a discrete charge identified separately on an end user's bill. 457 F.3d at 1241. To determine whether the FCC acted within its authority in issuing this regulation, the Eleventh Circuit considered whether line items were "rates charged" within the meaning of section 332, focusing on the "ordinary, contemporary, common meaning" of the phrase. *Id.* at 1254. The Court stated:

> A 'rate' as defined by the Oxford English Dictionary, is '[t]he amount of a charge or payment . . . having relation to some other amount or basis of calculation.' [citation]. Other dictionaries define a 'rate' as '[a]n amount paid or charged for a good or service,' Black's Law Dictionary 1268 (7th ed. 1999), or 'a charge per unit of a public-service commodity,' Merriam-Webster Online Dictionary, *available at* www.m-w.com/cgi-bin/dictionary.

*Id.*

Applying this definition, the Court found that "the prohibition or requirement of a line item affects the *presentation* of the charge on the user's bill, but it does not affect the *amount* that a user is charged for service," and that, as a result, line items did not qualify as "rates" within the meaning of section 332. *Id.* (emphasis added); *see also id.* at 1255 (state regulations at issue

"do not require a carrier to recover nor prohibit a carrier from recovering a particular cost" but "pertain only to the presentation of that cost on customer bills."). Thus, the Court confirmed that section 332 preempts state interference with the amount of a charge or recovery of a cost by wireless carriers, while permitting state regulation of how such a charge must appear on a customer bill. The Eleventh Circuit's refusal to accept the FCC's interpretation of the word "rate" is significant because, as the Court recognized, under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the FCC's interpretation is to be given "controlling weight" if the statute were deemed ambiguous. *NASUCA*, 457 F.3d at 1253 (internal quotation marks and citations omitted). The Eleventh Circuit's refusal to do so reflects the fact that the ordinary meaning of the word "rate" is clear and unambiguous.

Verizon Wireless's late payment fee is a "rate" under this definition because it is a charge or payment for a service. Most immediately, it is a charge for the service of extending credit to a customer beyond the due date for a bill. It is also a charge for wireless service because it is a "charge or payment" both "having relation to" and a "basis of calculation" in the amount of wireless service usage, *i.e.* the size of the bill. *Id.* at 1254. While there is a minimum amount, the amount of the charge varies with the unpaid balance on the customers' wireless bill. In any event, the precise characterization of the charge - whether it is for credit service, wireless service or both - is immaterial because section 332's prohibition on state regulation, by its plain terms, extends to *all* "rates charged *by* any commercial mobile service." 47 U.S.C. § 332(c)(3)(A) (emphasis added). Under this language, what matters is that the charge is assessed by a commercial mobile service, such as Verizon Wireless,[1] rather than the type of service for which the charge is imposed. *See Gilmore v. Southwestern Bell Mobile Sys., Inc.*, 156 F. Supp. 2d 916, 919 (N.D. Ill. 2001) (holding that a state law claim challenging a wireless carrier's "Corporate Account Administration Fee," which plaintiffs claimed were levied without provision of any additional services was preempted by section 332). Verizon Wireless's late payment fee is undoubtedly an amount charged for a service by a commercial mobile service and lies within the scope of section

---

[1] It is well-established that "a commercial mobile service" refers to wireless service providers including Verizon Wireless. *See Cellco P'ship*, 431 F.3d at 1080.

332, unlike the line items considered in *NASUCA* which the FCC found "cannot be attributed to" any service or product. *NASUCA*, 457 F.3d at 1255.

This conclusion is confirmed by state statutory definitions of rate in the utility context. State regulatory statutes employ a broad definition of the term "rate" that is consistent with the common understanding of rate described above, *i.e.*, any and all charge or compensation assessed by a public utility for service. *See e.g.*, 220 Ill. Comp. Stat. 5/3-116 (defining "rate" under Illinois law as "includ[ing] *every . . . charge . . or other compensation* of any public utility . . .") (emphasis added); Ark. Code Ann. § 23-1-101(10) (providing that "'[r]ate' means and includes *every compensation*, charge, fare, toll, rental, and classification, or any of them, demanded, observed, charged, or *collected by any public utility for any service*, products, or commodity offered by it as a public utility to the public . . .") (emphasis added); MD Code Ann., Pub. Util. Cos., § 1-101; Tex. Util. Code Ann. § 101.003(12); N.M. Stat. § 62-3-3(H) (1978); Minn. Stat. § 216B.02, subd. 5; 66 Pa. Con. Stat. Ann. § 102; Wyo. Stat. Ann. 1977 § 37-1-102; Ky. Rev. Stat. § 278.010(12); N.C. Gen. Stat. Ann. § 62-3(24). These definitions of the term rate would clearly include a late fee such as that being challenged by plaintiffs. Indeed, in *In re Mountain Cable Company, dba Adelphia Cable Communications*, Nos. 6117, 6118, 6119, 1999 WL 628268 (Vt. Pub. Serv. Bd. May 3, 1999), the Vermont Public Service Board invoked its statutory authority to "remedy unjust or unreasonable *rates* [and to] order[] refunds for excessive *rates*" to order a cable company to refund certain late fees to customers. *Id.* at section entitled Late Fees, Board Authority to Regulate Fees for Late Payment (emphasis added). The Board noted that "the Vermont Legislature has given the Board the authority to regulate all *rates* for cable television systems to the full extent that federal law allows" and expressed "*no doubt* that 'late fees' as fees, are among such *rates* . . ."). *Id.* at section entitled Board Discussion, subsection B, Adelphia's Comments, subpart 10 (emphasis added).

That existing state law defines a "rate" to include any and all charges, including late payment charges, is highly significant in interpreting section 332. In enacting section 332, Congress intended "[t]o foster the growth and development of mobile services that, by their nature, operate *without regard to state lines* as an integral part of the *national* telecommunications

infrastructure," and to preempt traditional state utility regulation which Congress viewed as standing in the way of that goal. H.R. Rep. No. 103-11, *reprinted in* 1993 U.S.C.C.A.N. 378, 587 (emphasis added). It did so by using the very same word "rate" that states have used to regulate all charges and other compensation assessed by public utilities. It would be highly incongruous for Congress to have preempted state regulation of "rates" while preserving state jurisdiction over a charge that clearly falls within existing state law definitions of a "rate." A contrary interpretation would violate the cannon of statutory construction that "Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts." *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991); *see also Doe v. Mann*, 415 F.3d 1038, 1046 (9th Cir. 2005) ("[i]f Congress did not seek to have [existing] principles applied to the interpretation of [new statute], we presume that it would have said so.").

### C. Section 332's Reservation of State Authority Over "Other Terms and Conditions" Does Not Save Plaintiff's Claims

The last clause of section 332, which provides that the statute does not "prohibit a State from regulating the other terms and conditions of commercial mobile services," 47 U.S.C. § 332(c)(3)(A), does not apply to plaintiff's claims . Given the statute's express preemption of state regulation of rates and entry, the savings clause can only be read to preserve state authority over terms and conditions *other than* rates and entry.

The last clause of section 332 has generally been interpreted to permit state-law claims premised on inadequate disclosures. *See e.g., Nixon v. Nextel West Corp.*, 248 F. Supp. 2d 885, 892 (E.D. Mo. 2003); *Spielholz v. Superior Court*, 86 Cal. App. 4th 1366, 1375 (2001); *Russell v. Sprint Corp.*, 264 F. Supp. 2d 955, 962 (D. Kan. 2003); *Cf. In re Long Distance Telecomm. Litig.*, 831 F.2d 627 (6th Cir. 1987). The *NASUCA* decision is a recent example of this line of authority holding that "[b]ecause the *presentation* of line items on a bill is not a 'charge or payment' for service, Oxford English Dictionary (2d ed. 1989), it is an 'other term or condition' regulable by states." 457 F.3d at 1254 (emphasis added). This line of authority is consistent with the legislative history of the statute, where the House Budget Committee report stated:

> By "terms and conditions," the Committee intends to include such matters as *customer billing information and practices and billing disputes* and other consumer protection matters; facilities siting issues (e.g., zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority. This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under "terms and conditions."

H.R. Rep. No. 103-111, at 261, *reprinted in* 1993 U.S.C.C.A.N. at 588 (emphasis added).[2] Courts have also cautioned that "[t]o avoid subsuming the regulation of rates within the governance of 'terms and conditions,' the meaning of 'consumer protection'" as used in the Committee Report "must exclude regulatory measures . . . that directly impact the rates charged by providers." *Cellco P'ship*, 431 F.3d at 1083. Thus, challenges to the reasonableness of a wireless carrier's charges cannot be regarded as the regulation of "other terms and conditions."

*Gilmore* involved just such a challenge and is similar to the facts of this case. In *Gilmore*, plaintiffs challenged the defendant carrier's account administration fee as not justified by any additional services and levied "for the sole purpose of enabling [defendant] to generate more revenue without appearing to raise its rates for cellular service." 156 F. Supp. 2d at 919. In ruling that the claims related to this fee were preempted by section 332, the district court concluded:

> Plaintiff's contract allegations explicitly raise the issue of whether it received sufficient services in return for the Fee. That is a rate issue. Also, alleging that the Fee is unconscionable and that defendant did not act in good faith are allegations that the Fee is unjust and/or unreasonable.

*Id.* at 924 (internal citations omitted). The Court distinguished claims that were based on the defendant's alleged failure to disclose the fee, noting that "[s]uccess on the nondisclosure fraud claim would not require proof that the Fee was unreasonably high or unjustified in light of any new services provided in return." *Id.* As a result, these claims were not preempted by section

---

[2] Given that the plain meaning of the text of section 332 clearly encompasses late payment charges, resort to legislative history is unnecessary. *United States v. Stewart*, 420 F.3d 1007, 1020 (9th Cir. 2005). The legislative history nonetheless confirms that Congress was primarily concerned with information practices when it enacted the saving clause of section 332.

332. *See also Ball v. GTE Mobilnet*, 81 Cal. App. 4th 529, 537-38 (2000) (allowing claims that defendant failed to disclose practice of rounding up to the next full minute of use for billing purposes to stand while finding that claims that "attack the reasonableness of the method by which the defendants calculate the length" and therefore "direct[ly] challenge to the rates charged by the defendants for cellular phone service "are preempted by section 332).

As the *Gilmore* court aptly observed, "[t]he key focus" in the case law is "whether the validity of the [rate] had to be determined to resolve the claim." 156 F. Supp. 2d at 922. In this case, plaintiffs' claims *would* require a determination of whether Verizon Wireless's charges are valid or are instead "unreasonable, unjust, or otherwise inappropriate." *See id.* at 923. Each of plaintiff's claims depends upon a finding that the late charge is unconscionable or void under California law. As the *Gilmore* court recognized, these claims depend on whether the amount Verizon Wireless charges is reasonable and are preempted by section 332. *See also Kiefer v. Paging Network Inc.*, 50 F. Supp. 2d 681, 685 (E.D. Mich. 1999) (rejecting plaintiff's claim that late payment fee for a paging service should be "construed as a . . . 'term and condition'" rather than as a "charge" and staying claim in deference to the FCC under the doctrine of primary jurisdiction.).

One district court has concluded that a late fee is a "term or condition" that may be regulated by the states. *See Brown v. Washington/Baltimore Cellular*, 109 F. Supp. 2d 421 (D. Md. 2000). The *Brown* court's reasoning is unpersuasive and its conclusion flawed. In concluding in a single paragraph that "late fees are not included in 'rates' of service, but rather are part of the 'other terms and conditions' of service" (*id.* at 423), the *Brown* court did not analyze the ordinary meaning of the term, any cases interpreting section 332, or any other authority that might shed light on the meaning of the statute. Rather, the only case cited by the district court was *United Cable Television v. Burch*, 732 A.2d 887 (Md. 1999), which is wholly inapposite.

In *Burch*, the Maryland Supreme Court held that a cable company's late fee exceeded the legal rate of interest of 6 percent and was therefore void under Maryland law.[3] The

---

[3] Verizon Wireless vigorously disputes that its late payment charge is unconscionable or

Maryland Supreme Court had no occasion to and did not consider whether the late payment fee was part of the defendant cable operator's "rate" or some other "term or condition": section 332 does not apply to cable operators, and these statutory concepts had no relevance to the claim at hand. From the *Burch* court's conclusion that late fees are a "form of liquidated damages for failure to pay bills on time," the *Brown* court made the leap to the conclusion that, therefore, they are not "rates." *Brown*, 109 F. Supp. 2d at 423 & n.1. But this reasoning has no support in logic or the statutory language. A charge that is claimed to be an unreasonable liquidated damages provision can still be a "rate" within the plain meaning of the statute. As discussed above, a rate is simply a monetary charge for a service. Verizon Wireless's late payment charge is a charge for wireless service and/or for the service of providing credit beyond the bill's due date and comfortably fits within the statutory definition of a "rate." The *Brown* court erred in ignoring the language of the statute and relying on a case that did not even address the statute.

### D. The Late Fee Is Part of Verizon Wireless's Rate Structure and Cannot Be Regulated by State Law

In addition to being a "rate," Verizon Wireless's late payment charge is also part of the company's "rate structure"—that is, the chosen mechanism by which Verizon Wireless seeks to recover a portion of its costs. Section 332 also preempts the application of state law to challenge the reasonableness of a wireless carrier's rate structure.

The FCC has held that section 332's prohibition on state regulation of rates extends to both the level of a rate and its structure. The FCC found "that the term 'rates charged' in Section 332(c)(3)(A) may include both rate levels and rate structures for [commercial mobile radio service] and that the states are precluded from regulating either of these." *In re Southwestern Bell*, 14 F.C.C.R. 19,898, ¶ 20. Accordingly, "states not only may not prescribe

---

unreasonable under state law, if state law were permitted to apply. As the *Brown* court notes, 109 F. Supp. 2d at 422, the Maryland Legislature enacted a statute, in response to the holding in *Burch*, specifically to overturn the holding of *Burch* and permit late fees of "either (1) 1.5% per month of the amount due; or (2) $5 or 10% per month of the amount due, whichever is greater, for a maximum of three months," *i.e.*, an amount similar to and potentially greater than Verizon Wireless's late payment charge. *Cf.* FAC ¶ 14 (late payment rate at 1.5% per month of the amount due or $5, whichever is greater).

how much may be charged for these services, but also may not prescribe the rate elements for CMRS." *Id.* This means that a state is prohibited not only from declaring a particular element of wireless carrier's rates unreasonable but also from attempting to dictate how a wireless carrier may structure its rates - *i.e.*, through what particular combination of fees a wireless carrier may seek to recover its costs of providing service.

The district court in *Kiefer*, 50 F. Supp. 2d at 685, in rejecting the plaintiff's argument that a late payment charge is "merely a 'term and condition' of the parties' service contract," explained the rationale for viewing such charges as part of the "overall rate structure for paging services."

> Plaintiff's argument ignores the fact that a service provider's overall rate structure can take several forms; i.e., it can spread the costs of untimely payments among its customers by charging everyone an increased rate, or it can include in its overall rate structure a separate charge for untimely payments that are to be imposed solely on those customers who fail to timely pay their bills. Defendant chose the latter of these two options to be included in its overall rate structure.

*Id.* at 685. While a state law does not regulate rates merely because it imposes additional compliance costs that may be passed through to consumers in the form of higher charges, *see NASUCA*, 457 F.3d at 1256, a state does regulate rates when it seeks to regulate how a carrier recovers its pre-existing costs of doing business.

Plaintiffs' claims fall squarely within the prohibition on regulation of rate structures. As the plaintiff concedes, Verizon Wireless incurs a real cost when a customer does not pay his or her balance by the date indicated on the bill. FAC ¶ 22 (alleging that the late fee amount exceeds Verizon Wireless's "carrying costs"). Verizon Wireless incurs further costs in attempting to collect late payments. Verizon Wireless also incurs various other costs of doing business. States cannot dictate the particular charges that Verizon Wireless chooses to utilize to recover any of these costs. Just as a state cannot prohibit a wireless carrier from seeking to recover credit and collection costs in a base monthly charge, in a service activation charge, or in an account maintenance charge, so too the state cannot regulate a carrier's choice to recover such costs through a late charge. As the *Kiefer* court properly concluded, a late payment charge is a

part of the carrier's "overall rate structure," and states cannot limit carrier's ability to establish such charges on the grounds that they are unreasonable.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

DATED: August 31, 2007

Munger, Tolles & Olson LLP
 HENRY WEISSMANN
 HOJOON HWANG
 DANIEL J. POWELL

By: _____
 HOJOON HWANG

Attorneys for Defendant
CELLCO PARTNERSHIP (D/B/A VERIZON WIRELESS)