**CHAVEZ & GERTLER LLP**
MARK A. CHAVEZ (Bar No. 90858)
NANCE F. BECKER (Bar No. 99292)
42 Miller Avenue
Mill Valley, California 94941
Telephone:  (415) 381-5599
Facsimile:   (415) 381-5572
Email: mark@chavezgertler.com
           nance@chavezgertler.com

**BRAYTON PURCELL LLP**
ALAN R. BRAYTON (Bar No. 73685)
PETER B. FREDMAN (Bar No. 189097)
CHARLOTTE E. SCOTT (Bar No. 225581)
222 Rush Landing Road
Novato, CA 94948-6169
Telephone:  (415) 898-1555
Facsimile:   (415) 898-1247
Email:  pfredman@braytonlaw.com

Attorneys for Plaintiffs and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CATHERINE GELLIS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS, INC., a Delaware corporation; VERIZON WIRELESS, an unincorporated association; CELLCO PARTNERSHIP, an unincorporated association; and DOES 1-100, inclusive, <br><br> Defendants. | Case No. C 07-03679 JSW <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT VERIZON WIRELESS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Date:  November 2, 2007 <br> Time:  9:00 a.m. <br> Place:  Courtroom 2 <br><br> The Honorable Jeffrey S. White |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  ISSUES PRESENTED ..........................................................................................2

III. SUMMARY OF ARGUMENT ............................................................................2

IV. FACTS ...................................................................................................................4

V.  ARGUMENT.........................................................................................................5

  A.  THE LATE FEE PROVISION IS A LIQUIDATED DAMAGES CLAUSE BECAUSE IT OSTENSIBLY ASSESSES DAMAGES FOR THE CUSTOMER'S BREACH OF THE PROMISE TO PAY ON TIME ......................................................5

  B.  SECTION 332 DOES NOT PREEMPT CAL. CIVIL CODE SECTION 1671(D) BECAUSE LIQUIDATED DAMAGES CLAUSES ARE "OTHER TERMS AND CONDITIONS," NOT "RATES"....................................................................... 7

  C.  EVEN ASSUMING PREEMPTION ARGUENDO, THE MOTION TO DISMISS FAILS BECAUSE THE PROTECTIONS OF CAL. CIVIL CODE SECTION 1671(D) ARE INCORPORATED INTO THE TERMS OF THE CONTRACT........ 11

VI. CONCLUSION.................................................................................................. 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Bastien v. AT&T Wireless Services*, Inc.,
   205 F.3d 983 (7th Cir.2000) ................................................................................................ 9, 10

*Boomer v. AT&T Corp.*,
   309 F.3d 404 (7th Cir.2002) ..................................................................................................... 10

*Brown v. Washington/Baltimore Cellular, Inc.*,
   109 F.Supp.2d 421 (D.Md. 2000) ................................................................................ 6, 7, 8, 9

*Esquivel v. Southwestern Bell Mobile Sys., Inc.*,
   920 F.Supp. 713 (S.D.Tex.1996) ............................................................................................ 7, 8

*Fedor v. Cingular Wireless Corp.*,
   355 F.3d 1069 (7th Cir.2004) ............................................................................................. 10, 12

*Fort Vancouver Plywood Co. v. U.S.*,
   747 F.2d 547 (9th Cir.1984) ....................................................................................................... 12

*Gilmore v. Southwestern Bell Mobile Systems, Inc.*,
   156 F.Supp.2d 916 (N.D.Ill. 2001) .................................................................................. 8, 9, 10

*In re Ankeny*,
   184 B.R. 64 (9th Cir.BAP (Cal.)1995) ....................................................................................... 12

*In re Bubble Up Delaware, Inc.*,
   684 F.2d 1259 (9th Cir.1982) ........................................................................................................ 6

*In re Comcast Cellular Telecom. Litigation*,
   949 F.Supp. 1193 (E.D.Pa. 1996) .................................................................................................. 8

*In re Wireless Telephone Federal Cost Recovery Fees Litigation*,
   343 F.Supp.2d 838 (W.D.Mo.2004) ........................................................................................... 10

*In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation*,
   327 F.Supp.2d 554 ......................................................................................................................... 10

*Kiefer v. Paging Network, Inc.*,
   50 F.Supp.2d 681 (E.D.Mich.1999) ............................................................................................. 9

*Metropolitan Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987) ........................................................................................................................... 9

# TABLE OF AUTHORITIES

*Nat'l Ass'n of State Utility Consumer Advocates, v. F.C.C.*,
   457 F.3d 1238 (11th Cir.2006) .................................................................................... 7, 10

*Shroyer v. New Cingular Wireless Services, Inc.*,
   ___F.3d ___, 2007 WL 2332068 C.A.9 (Cal.) 2007 ........................................................ 10

*Tenore v. AT & T Wireless Services*,
   136 Wash.2d 322 (1998) .................................................................................................... 11

*Ting v. AT & T*,
   319 F.3d 1126 (9th Cir.2003) ............................................................................................. 10

*TPS Utilicom Services, Inc. v. AT & T Corp.*,
   223 F.Supp.2d 1089 (C.D.Cal.2002) ............................................................................. 9, 10

**Federal Statutes**

47 U.S.C. § 332 ........................................................................................................*passim*

47 U.S.C. § 414 ..................................................................................................................... 7

**State Cases**

*Action Network, Inc. v. AT&T Broadband of Southern California, Inc.*,
   135 Cal.App.4th 1023 (2006) ............................................................................................. 6

*Broadband of Southern California, Inc.*,
   135 Cal.App.4th 1023 (2006) ............................................................................................. 6

*Ball v. GTE Mobilnet of California*,
   81 Cal.App.4th 529 (2000) .................................................................................................. 8

*Ridgley v. Topa Thrift & Loan Ass'n*,
   17 Cal.4th 970 (1998)…………………………………………………………………….6

*Spielholz v. Superior Court*,
   86 Cal.App.4th 1366 (2001) …………………………………………………………….9

**State Statutes**

Cal. Civil Code §1654 …………………………………………………………………...11

Cal. Civil Code § 1671(d)……………………………………………………………..11, 12

# TABLE OF AUTHORITIES

**Other Authorities**

*In Re Truth-In-Billing* (2005) 20 F.C.C.R. 6448 ................................................................. 7, 10

*In re Wireless Consumers Alliance* (2000) 15 F.C.C.R. 17021 ......................................... 9, 11

*Restatement (Second) of Contracts* § 356 (1981), Comment A ............................................... 6

*Restatement (Second) of Contracts* § 356 (1981), Comment C ............................................... 6

## I. INTRODUCTION

Defendants' motion to dismiss confuses "rates" provisions, which reflect charges for services promised under a contract, with liquidated damages provisions, which assess damages for breaches of the contract. Defendants' preemption argument must fail because plaintiff's claims are limited to the latter category.

It is a generally applicable precept of contract law that parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach *only* as long as the provision does not disregard the principle of compensation. Generally speaking, a provision liquidating the damages for a breach is valid unless the party seeking to invalidate it can prove it was unreasonable in relation to the potential damages under the circumstances existing at the time the contract was made.

California law provides enhanced protections for consumers against excessive liquidated damages clauses. In California consumer contracts, liquidated damages clauses are presumptively void, and can only be validated by a showing that the provision in question (1) represents a reasonable endeavor to estimate actual damages resulting from breach and (2) when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage. This rule is codified in California Civil Code section 1671(d).

The liquidated damages clause at issue here provides that Verizon Wireless may (but only "to the extent permitted by the law of the state of the billing address [of the customer]") charge the greater of $5 or 1.5% per month as compensatory damages for the breach that occurs when a customer fails to pay a balance in full by the date stated on the bill. As a result of this clause, plaintiff was charged the $5 minimum fee for paying a $131 Verizon Wireless bill nine days late. This 3.8% charge for nine days represents an annual percentage rate (APR) of about 154%.

Plaintiff alleges that this clause, and the $5 minimum charge in particular, is void as a penalty under California law. The First Amended Complaint (FAC) alleges that defendants' collection of these penalties *both* violates California law *and* breaches its contracts with her and thousands of similarly situated Californians. In addition to the contract claim, she asserts

related causes of action arising out of California consumer protection statutes and common law.

## II. ISSUE PRESENTED

The issue presented is whether plaintiff's claims are preempted by section 332(c)(3)(A) (hereafter, "section 332") of the Federal Communication Act (FCA), which states:

> [N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. § 332(c)(3)(A)

Specifically, defendants assert that the preemptive force of section 332's prohibition of state regulation of "rates charged" prevents the application of California law to the following provision of plaintiff's mobile services contract:

> Payment is due in full as stated on your bill. IF WE DON'T RECEIVE PAYMENT IN FULL WHEN DUE, WE MAY, TO THE EXTENT PERMITTED BY THE LAW OF THE STATE OF THE BILLING ADDRESS WE HAVE ON FILE FOR YOU AT THE TIME, CHARGE A LATE FEE OF UP TO 1.5 PERCENT A MONTH (18 PERCENT ANNUALLY), OR A FLAT $5 A MONTH, WHICHEVER IS GREATER, ON UNPAID BALANCES.

FAC Ex. B, pg. 5.

## III. SUMMARY OF ARGUMENT

Defendants' motion relies on the false premise that the provision at issue is not a liquidated damages or penalty clause; that accepting late payments is a "service" that Verizon Wireless provides to its customers; and that late fees are the "rates" it charges for that service. This premise is refuted by the plain language of the provision itself, and more so when read in the context of the contract as a whole and the related factual allegations of

1   the FAC. The fact of the matter is that the premise is flat-out facetious: defendants' own
2   bills describe late fees as "liquidated damages".[1]
3       Recognizing this as a liquidated damages provision is determinative. Liquidated
4   damages provisions are *by definition* distinct from rate provisions. Whereas the latter reflect
5   charges for services rendered under a contract, the former assess damages for breaches of the
6   contract. While Congress may have completely preempted claims relating to "rates," it has
7   left regulation of other "terms and conditions" (specifically including "consumer protection
8   matters") to the states. California's prohibition of excessive liquidated damages provisions
9   in consumer contracts falls squarely into the latter category.
10      The argument that prohibiting excessive liquidated damages will result in rate
11  increases is anathema to the principle that liquidated damages must be compensatory in
12  nature: the late fees should roughly equal damages incurred as a result of the lateness.
13  Plaintiff does not seek to prohibit Verizon Wireless from imposing late fees, she merely
14  seeks to enforce the legal requirement that such fees reasonably approximate its damages. In
15  any event, Congress did not preempt all claims that could possibly influence rates, but only
16  those that involve the reasonableness or lawfulness of the rates themselves. All of the
17  authorities that have looked at the issue agree that state regulation of late fees and other
18  liquidated damages provisions is not preempted by section 332.
19      The policy behind section 332 also supports this straightforward conclusion. Even
20  assuming *arguendo* that preventing Verizon Wireless from assessing excessive liquidated
21  damages could legitimately impact the rates it charges for its services, allowing it to do so
22  does not further the Congressional intent of allowing market forces to determine rates. On
23  the contrary, requiring wireless providers to rely on up-front billing practices will only
24  enhance competition.

---

[1] Judicial Notice is requested of plaintiff's September 13, 2006 Verizon Wireless billing statement, submitted herewith, which reads in relevant part: "A late payment charge applies for unpaid balances. The charge is the greater of $5 or 1.5% per month or as permitted by law, and are *liquidated damages*, not a penalty. Our records indicate your account is past due. Please send payment now to avoid service disruption."

Finally, even assuming preemption *arguendo,* defendants' motion to dismiss fails because the subject late fee provision incorporates California liquidated damages law into the terms of the contract between plaintiff and Verizon Wireless. If this is an invalid penalty clause under California law, then it is inapplicable as a matter of contract between the parties even if not void as a matter of state regulatory law.

## IV. FACTS

When plaintiff Catherine Gellis entered into a new two-year agreement with Verizon Wireless, she executed a receipt-like short form agreement, which incorporated by reference a *Verizon Wireless Customer Agreement Terms and Conditions* document (the "CA"), which incorporated by reference her *Calling Plan*. FAC Ex. A; FAC, ¶¶12-14. Thus the overarching contract between plaintiff and Verizon Wireless was formed and documented.

The CA itself is a dense, nine-page, adhesion contract directed primarily at establishing the customers' obligations and limiting those of Verizon Wireless. FAC Ex. B. Pricing issues are deferred to the *Calling Plan*. Id., pg. 1. Where the CA uses the term "rates" it does so in the ordinary fashion. For example, it explains that "[t]here may be extra charges … and higher *rates* for roaming calls, depending on your calling plan." Id., pg. 4 (emphasis added).

The subject liquidated damages clause is one of several provisions of the CA that sets forth Verizon Wireless's rights in the event customers fail to perform their obligations under the contract. FAC Ex. B. The vast majority of charges are billed in advance. Id., pg. 4; see FAC, ¶¶16-17. The customer has no right to carry forward a balance: "Payment is due in full as stated on [the] bill." FAC Ex. B, pg. 5. In addition to the late fees, Verizon Wireless reserves the right to suspend or terminate service if the customer pays "late more than once in any 12 months". Id., pg. 6. If service is suspended, Verizon Wireless charges an unspecified reconnection fee.[2] Id., pg. 4. If service is terminated, it charges an early

---

[2] Verizon Wireless currently charges a reconnection fee of $15 per phone number.

termination fee of up to $175 per phone number. Id., pg. 2. If the customer fails to pay the amounts charged, all additional costs of collection are charged to the customer.[3] Id., pg. 5.

When plaintiff neglected to pay her December bill by the specified due date, the next month's bill demanded immediate payment of all charges for *both* months plus a $5 late charge. FAC, ¶¶16-19. Plaintiff complied by paying the entire balance immediately after receiving said January bill. Id., ¶19. Thus plaintiff paid $5 as compensation for paying the $131 December bill nine days after the specified due date, and Verizon Wireless obtained payment of the $131 January bill about twenty-one days in advance of when it would otherwise have been due. Id., ¶20.

Plaintiff alleges that these bills were issued automatically in the ordinary course of defendants' business, and that no additional human effort or piece of paper was expended by them in collecting these sums. Id., ¶¶21-22. She further alleges that Verizon Wireless does not extend credit to its customers and would not have allowed her to carry any significant balance for any significant length of time without exercising its contractual right to suspend and/or terminate service and collect reconnection and/or early termination fees therefore. Id., ¶23.

## V. ARGUMENT

### A. The Late Fee Provision Is A Liquidated Damages Clause Because It Ostensibly Assesses Damages For The Customer's Breach Of The Promise To Pay On Time

The concepts relating to liquidated damages provisions and limitations thereon are matters of generally applicable contract law:

> *Liquidated damages or penalty.* The parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach as long as the provision does not disregard the principle of compensation. …

---

[3] Here again the CA self-limits defedants' collection rights to those allowed under "the law of the state of the billing address [of the customer]" at the time the account is sent to collections. FAC Ex. B, pg. 5.

> However, the parties to a contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy.

*Restatement (Second) of Contracts* § 356 (1981), Comment A; see also *In re Bubble Up Delaware, Inc.,* 684 F.2d 1259, 1262 (9th Cir.1982) (U.S. law).

Regardless of its validity, or what choice of law is applied, the late fee provision at issue here must be construed as a liquidated damages clause because it is triggered by the breach of the promise to pay on time and purports to assess damages therefore. *Ibid.* Most conventional late fee provisions are liquidated damages provisions. *Ridgley v. Topa Thrift & Loan Ass'n,* 17 Cal.4th 970, 978 (1998) (loan late fees); *Action Network, Inc. v. AT&T Broadband of Southern California, Inc.,* 135 Cal.App.4th 1023, 1028 (2006) (internet late fee); *Brown v. Washington/Baltimore Cellular, Inc.*, 109 F.Supp.2d 421, 423 (D.Md. 2000) (cellular late fee).

Verizon Wireless suggests that its late fee provision should be construed instead as an option it offers its customers to carry balances forward. "Sometimes parties attempt to disguise a provision for a penalty by using language that purports to make payment of the amount an alternative performance under the contract." *Restatement (Second) of Contracts* § 356 (1981), Comment C.  In these "disguised penalty" cases, "a court will look to the substance of the agreement to determine whether this is the case or whether the parties have attempted to disguise a provision for a penalty that is unenforceable". *Ibid.*; see also *Ridgley, supra, 979.*

In this case, however, there is no pretense even of alternative performance.  Verizon Wireless itself describes the late fees as "liquidated damages".  See Request For Judicial Notice and Footnote 1 hereto.   The CA is unambiguous that the failure to pay on time subjects the customer to escalating remedies.  FAC, Ex. B, at pg. 5.  When a payment is late, the entire balance becomes due immediately upon delivery of the next bill.  FAC, ¶19. Verizon Wireless does not extend credit or allow its customers to carry forward balances

month after month. Id., ¶23. Therefore this late fee provision is a liquidated damages provision.

### B. Section 332 Does Not Preempt Cal. Civil Code Section 1671(d) Because Liquidated Damages Clauses Are "Other Terms And Conditions," Not "Rates"

Late fee provisions, in particular, and liquidated damages provisions, in general, are not preempted by section 332 because they are "other terms and conditions," not "rates" provisions. *Brown v. Washington/Baltimore Cellular, Inc., supra,* 423 (*Brown*) (late fees); *Esquivel v. Southwestern Bell Mobile Sys., Inc.*, 920 F.Supp. 713 (S.D.Tex.1996) (*Esquivel*) (early termination fees); see also *In Re Truth-In-Billing* (2005) 20 F.C.C.R. 6448, 6465 ("the neutral application of state contractual … laws [is] not preempted by section 332."), 6476 ("we tentatively conclude that the line between the Commission's jurisdiction and states' jurisdiction over carriers' billing practices is properly drawn to where states only may enforce their own generally applicable contractual and consumer protection laws, albeit as they apply to carriers' billing practices"), vacated on other grounds by *Nat'l Ass'n of State Utility Consumer Advocates, v. F.C.C.*, 457 F.3d 1238 (11th Cir.2006) (modified on reh'g, 468 F.3d 1272 (11th Cir.2006)) (*NASUCA*); 47 U.S.C. § 414 ("Nothing in [the chapter containing section 332] shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.")

In *Brown*, a class action brought by wireless telephone customers challenging late fees, "the question facing the court [was] whether late fees constitute 'rates charged' or 'other terms and conditions' of wireless telephone service." *Id.,* 423. Holding that "late fees are a form of liquidated damages for failure to pay bills on time," *Brown* concluded:

> [L]ate fees are not included in "rates" of service, but rather are part of the "other terms and conditions" of service. While rates of service reflect a charge for the use of cellular phones, late fees are a penalty for failing to submit timely payment. Defendants argue that late fee charges are completely preempted because a reduction in late fee charges will result in an increase in rates. However, any legal claim that results in an increased obligation for Defendants could theoretically increase rates. For example, a claim of false advertising could lead to an increased obligation to notify customers of

> charges, which could in turn lead to an increase in rates. Congress did not preempt all claims that would influence rates, but only those that involve the reasonableness or lawfulness of the rates themselves.

*Ibid.*

In *Esquivel*, a class action brought by wireless telephone customers challenging early termination fees, the "Court [was] persuaded that the liquidated damage provision [was] a 'term and condition' of the agreement rather than a rate." *Id.,* 715.  In reaching this conclusion, *Esquivel* held:

> [Section 332] specifically declines to prohibit the states from regulating terms and conditions. The congressional history indicates that the phrase "terms and conditions" was meant to include such matters as customer billing information and practices and billing disputes, "and other consumer protection matters." Plaintiffs' suit is invoking the common law of Texas designed to protect consumers from excessive liquidated damages provisions that are tantamount to penalties.

*Id.,* 715-716.

The reasoning of *Brown* and *Esquivel* applies equally here.  Neither case has any negative citing references.  On the contrary, even cases drawing the line in favor of preemption cite *Esquivel* as a counter-example of monetary charges that are not preempted because they "have only a tangential relationship to the actual rates for service paid by cellular customers."  *Ball v. GTE Mobilnet of California*, 81 Cal.App.4th 529, 539 (2000) (section 332 preempts claims challenging billing for non-communication time but not claims for inadequate disclosure of such billing practices); *In re Comcast Cellular Telecom. Litigation*, 949 F.Supp. 1193, 1201 (E.D.Pa. 1996) (complete preemption of challenges to billing for non-communication time).

*Gilmore v. Southwestern Bell Mobile Systems, Inc.,* 156 F.Supp.2d 916 (N.D.Ill. 2001) (*Gilmore*) – the focal point of defendants' argument that late fees are rates within the meaning of section 332 – itself cites *Brown's* contrary conclusion regarding late fees without disapproval. *Id.*, 923.  In *Gilmore,* plaintiff alleged that a wireless provider breached its contract with him when it began charging a Corporate Account Administration Fee that was not provided for in their contract.  *Id.,* 919.  *Gilmore* held that section 332 completely

preempted this claim because the Fee was a charge for wireless telephone services and, thus, was a "rate" under. *Id.,* 925.  In a footnote to its *Brown* citation, *Gilmore* posited:

> It need not be decided if *Brown* correctly construes the meaning of "rates" as used in § 332(c)(3)(A). Plaintiff does not allege that the Fee was a charge for something other than provision of cellular telephone services.

*Id.*, 923.

Defendants' thus face the logical incongruity that *Gilmore* specifically declined to reach the proposition for which they cite it.  Moreover, *Gilmore,* along with *Bastien v. AT&T Wireless Services*, Inc., 205 F.3d 983 (7th Cir.2000) (*Bastien*) which it followed, demonstrate that even the far outer limits of section 332 preemption never purported to classify late fees as rates.  *Bastien* held that even fraud and false advertising claims regarding service quality were completely preempted by section 332 because any challenge to service quality necessarily attacked the reasonableness of the rates charged for the service.  *Bastien,* 984; *Gilmore*, 922.  But, in doing so, B*astien* relied substantially on filed-rate doctrine analysis that is inapplicable to section 332 cases.  See discussions in *Spielholz v. Superior Court*, 86 Cal.App.4th 1366, 1379-1380 (2001) (disagreeing with *Bastien* and finding consumer claims regarding service quality issues not preempted by section 332) and *In re Wireless Consumers Alliance* (2000), 15 F.C.C.R. 17021, at FN 47 ("[Wireless] providers have engendered much confusion over the issue of the applicability of the filed rate doctrine in cases concerning the preemptive effect of Section 332 … Section 332 cases arise under a totally different regulatory regime"), ¶¶18-20, ¶28.[4]

By 2002, the "majority of district courts outside the Seventh Circuit [had found against] complete preemption under a more searching analysis of the

---

[4] Defendants here cite *Kiefer v. Paging Network, Inc.,* 50 F.Supp.2d 681 (E.D.Mich.1999) (*Kiefer*), which is not a section 332 or preemption case.  *Kiefer* held that the FCC had primary jurisdiction over plaintiff's 47 U.S.C. § 201(b) claim and stayed the action pending referral to the FCC. *Id.*, 686.  That is not an issue here.  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, (1987) (cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law).

1  Congressional intent underlying [section 332]". *TPS Utilicom Services, Inc. v. AT &*
2  *T Corp.*, 223 F.Supp.2d 1089, 1098-1100 (C.D.Cal.2002); *In re Wireless Telephone*
3  *Federal Cost Recovery Fees Litigation*, 343 F.Supp.2d 838, 850 (W.D.Mo.2004).
4  Subsequently, the *Bastien* ruling was "limited by *Fedor v. Cingular Wireless Corp.*,
5  355 F.3d 1069, 1072-74 (7th Cir.2004), which held that state law claims for breach of
6  contract, consumer fraud, and unjust enrichment based on allegations of improper
7  billing fall outside of the scope of section 332(c)(3)(A) and thus are not preempted."
8  *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation*,
9  327 F.Supp.2d 554, 565 (D.Md.2004). [5]
10       Defendants' reliance on *NASUCA* contradicts their reliance on *Gilmore*.
11  *NASUCA* held that the Federal Communications Commission (FCC) exceeded its
12  authority when it declared, in *In Re Truth-In-Billing, supra,* that section 332
13  preempted states from prohibiting the imposition of extraneous line-item fees and
14  surcharges – like the Corporate Account Administration Fee in *Gilmore*. *NASUCA,*
15  1243-44, 1247. So, whereas *Gilmore* held that section 332 completely preempted
16  even a customer's state contract claim that he was charged a line-item fee he never
17  agreed to, *NASUCA* holds that section 332 allows states to prohibit such line-item
18  billing practices whether the customer agrees to the charge or not. *Id.*, 1254-55.
19  *NASUCA* stands for the proposition that wireless providers' rights to ultimately
20  control the aggregate rates they charge for their services do not implicate a corollary
21  right to be free of regulation prohibiting billing practices that obscure the aggregate
22  rates in a sea of extraneous fees and surcharges. *Id.*, 1257-58.

---

[5] Outside of the section 332 context, the conflict between the Ninth and Seventh Circuits concerning FCA preemption in the post-tariff telecommunications environment further inures to the benefit of plaintiff in this case. In *Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir.2002), the Seventh Circuit held that the FCA preempts state-law challenges to the enforcement of class arbitration waivers. *Id.*, 423. In *Ting v. AT & T*, 319 F.3d 1126 (9th Cir.2003), however, the Ninth Circuit reached the opposite conclusion. *Id.,* 1135; see also *Shroyer v. New Cingular Wireless Services, Inc.,* --- F.3d ---, 2007 WL 2332068 C.A.9 (Cal.) 2007 (no Federal Arbitration Act preemption of state-law challenges to the enforcement of class arbitration waivers).

> Congress could have, if it desired, completely preempted state law by stating that § 332(c)(3)(A) would preempt all state laws that related to the rates charged, instead of providing for preemption only where state law regulates "the entry of or the rates charged" ... Compare ERISA's broader preemption clause which states that the law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).

*Tenore v. AT & T Wireless Services,* 136 Wash.2d 322, 338, FN 71 (1998); *In re Wireless Consumers Alliance, supra,* at 7036 ("*Tenore* and similar cases are more persuasive than those cases upholding preemption").

Nothing in the text of section 332 (or anywhere else) supports the assertion that Congress intended to preempt the states from enforcing their generally applicable contract and consumer protection laws like California Civil Code section 1671(d). *Ibid.* Moreover, such preemption would be inconsistent with the underlying Congressional intent of allowing market forces to determine rates. "If wireless providers are to conduct business in a competitive marketplace, and not in a regulated environment, then state contract and tort law claims should generally be enforceable in state courts." *In re Wireless Consumers Alliance, supra,* at 17034. To the extent prohibiting wireless providers from assessing excessive liquidated damages might impact rates, requiring billing practices that rely on up-front rates (as opposed to covert fees) facilitates the fair and transparent marketplace competition that Congress seeks.

**C.  Even Assuming Preemption, Arguendo, The Motion To Dismiss Fails Because The Protections Of Cal. Civil Code Section 1671(d) Are Incorporated Into The Terms Of The Contract**

Defendants' preemption argument fails to account for the fact that California's limitations on liquidated damages are incorporated by reference into the late fee provision of the contract applicable to California residents. FAC Ex. B, pg. 5 ("IF WE DON'T RECEIVE PAYMENT IN FULL WHEN DUE, WE MAY, TO THE EXTENT PERMITTED BY LAW OF THE STATE OF THE BILLING ADDRESS WE HAVE ON FILE FOR YOU AT THE TIME, CHARGE A LATE FEE OF UP TO…"); see also Id., pg. 9 ("Except to the extent we've agreed otherwise in the provisions on late fees, collection

1  costs, and arbitration, this agreement and disputes covered by it are governed by the laws of
2  the state of the encompassing the area code assigned to your wireless phone number when
3  you accepted this agreement, without regard to the conflicts of laws and rule of that state.")

4      The contractual language is plain, and any ambiguity must be interpreted against
5  Verizon Wireless as the drafter. Cal. Civil Code § 1654; *In re Ankeny*, 184 B.R. 64, 70 (9th
6  Cir.BAP (Cal.)1995) *Fort Vancouver Plywood Co. v. U.S.,* 747 F.2d 547, 553 (9th Cir.1984).
7  The manifest intent to incorporate California's limitations on liquidated damages into the late
8  fee provision is further evidenced by contrasting provisions elsewhere in the CA.  For
9  example, the provision that deals with the early termination fees utilizes a generally
10 applicable "to the extent permitted by law" disclaimer. Id., pg. 2 ("The Early Termination
11 Fee applies only to the extent permitted by law").

12     Accordingly, Verizon Wireless promised not to impose late fees that violate
13 California Civil Code section 1671(d) regardless of its applicability otherwise.  The FAC
14 alleges that defendants systematically breach this promise.  Even assuming preemption
15 *arguendo*, plaintiff's breach of contract claim survives this motion because nothing in section
16 332 permits Verizon Wireless to breach the contractual terms it agreed to. *Fedor v. Cingular*
17 *Wireless Corp.*, *supra,* 1074.  The breach of contract claim itself supports each of the related
18 consumer protection and common law claim in the FAC.  E.g., FAC, ¶34(a) (CLRA violation
19 for "representing that a transaction confers or involves rights, remedies, or obligations which
20 it does not have or involve"); FAC, ¶41 (UCL violation based on deceptive practices
21 becauseVerizon Wireless "misrepresents that it will abide by California law with respect to
22 the imposition of late fees on persons with California billing addresses").

### VI. CONCLUSION

Defendants' motion to dismiss based on section 332 preemption must be denied.

Dated:  September 14, 2007        CHAVEZ & GERTLER LLP
                                          BRAYTON PURCELL LLP


                                       By:   /s/
                                            Peter B. Fredman
                                            Attorneys for Plaintiff