1   HENRY WEISSMANN (SBN 132418)
    Henry.Weissmann@mto.com
2   HOJOON HWANG (SBN 184950)
    Hojoon.Hwang@mto.com
3   DANIEL J. POWELL (SBN 230304)
    Daniel.Powell@mto.com
4   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, 27th Floor
5   San Francisco, CA 94105
    Telephone:    (415) 512-4000
6   Facsimile:    (415) 512-4077

7   Attorneys for Defendant
    CELLCO PARTNERSHIP (D/B/A VERIZON WIRELESS)

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12   CATHERINE GELLIS, individually and          CASE NO.  C 07-03679 JSW
     on behalf of all others similarly situated,
13                                               **DEFENDANT CELLCO PARTNERSHIP'S
                        Plaintiff,               (D/B/A VERIZON WIRELESS) REPLY
14                                               MEMORANDUM OF POINTS AND
                  vs.                            AUTHORITIES IN SUPPORT OF
15                                               MOTION TO DISMISS FIRST AMENDED
     VERIZON COMMUNICATIONS, INC., a             COMPLAINT PURSUANT TO FED. R.
16   Delaware Corporation; VERIZON               CIV. P. 12(b)(6)**
     WIRELESS, an unincorporated
17   association; CELLCO PARTNERSHIP, an         DATE:  November 2, 2007
     unincorporated association; and DOES 1-     TIME: 9:00 a.m.
18   100, inclusive,                             PLACE: Courtroom 2
                                                 JUDGE: Hon. Jeffrey S. White
19                      Defendants.

20

21

22

23

24

25

26

27

28

I. **INTRODUCTION**

Verizon Wireless's Motion to Dismiss must be granted because the late payment charge is a "rate [] charged by" a wireless carrier within the meaning of § 332 of the Communications Act. 47 U.S.C. § 332(c)(3)(A). As a result, § 332 preempts any attempt to challenge the substantive reasonableness of the amount of the charge under state law, as Plaintiff's First Amended Complaint does. In her Opposition, Plaintiff offers no analysis of the language of the statute and its ordinary meaning. Instead, Plaintiff simply asserts, *ipse dixit*, that if the charge is a liquidated damage provision, then, "by definition," it cannot be a "rate" but must be an "other term[] or condition[]." But there is no basis for Plaintiff's assumption that liquidated damages and rates are mutually exclusive categories. Even if the late payment charge were deemed a liquidated damage amount under California law, it is also a "rate" under federal law. The late payment charge sets forth the amount that customers owe when they do not pay their bills as they become due, thereby forcing Verizon Wireless to extend credit to them. The time of payment is inextricably linked to the charge for wireless service, and a late payment charge is both a fee for extending credit and a part of the price for wireless service, whether late payment is characterized as an alternative means of performing the contract or a breach, and whether the late payment charge is separately stated or rolled into the base prices for the service.

Plaintiff's reliance on the reference to state law in the customer service agreement puts the cart before the horse. Because the late payment charge is a "rate" within the meaning of § 332, there is no state law that could apply with respect to the reasonableness of the amount and, as a matter of federal law, the reference to state law in the contract cannot constrain Verizon Wireless's pricing. In any event, Plaintiff's claims predicated on alleged violation of state statutory law, rather than contractual obligations, must be dismissed.

II. **ARGUMENT**

A.    **The Late Payment Charge Is a Rate Under the Plain Meaning of the Statute**

As shown in the Motion to Dismiss, Verizon Wireless's $5 late payment charge is a "rate" under the plain meaning of that term. The charge, like other fees charged by Verizon Wireless, is paid by the customer in exchange for the provision of credit and/or wireless service.

1    *See Nat'l Ass'n of State Util. Consumer Advocates v. FCC* ("NASUCA"), 457 F.3d 1238, 1258

2    (11th Cir. 2006) ("A 'rate,' as defined in the dictionary and previous decisions by the [FCC] is

3    '[t]he amount of a charge or payment.'").  State regulatory statutes frequently define "rate" to

4    include late payment charges, and § 332 should be interpreted consistently with this legal

5    background against which Congress legislated.  *See* Motion at 8-9.

6              Plaintiff offers no analysis of the text of the statute in her attempt to demonstrate

7    otherwise.  Instead, Plaintiff asserts that "[l]iquidated damages provisions are *by definition*

8    distinct from rate provisions."  Opp. at 3.  This assertion, central to Plaintiff's argument and also

9    the erroneous basis of the holding in Plaintiff's principal authority (*Brown v.*

10   *Washington/Baltimore Cellular, Inc.*, 109 F. Supp. 2d 421 (D. Md. 2000)), is entirely unexplained

11   and unsupported.  In fact, Plaintiff does not even provide a "definition" of a rate that would

12   demonstrate that it is distinct from liquidated damages.  On the contrary, damages for breach of

13   contract and rates for wireless service are not mutually exclusive categories.  If a subscriber fails

14   to pay a $39.99 monthly plan fee, that amount would constitute contract damages that Verizon

15   Wireless may seek to recover.  Yet, no one would question that the amount also represents a

16   "rate" for wireless service.  Likewise, as long as the late payment charge fits the statutory

17   definition of a "rate," it is irrelevant whether state law would also characterize it as liquidated

18   damages:  Section 332 would, by its plain terms, preclude application of state law that would

19   purport to evaluate the reasonableness of that rate.

20             The $5 late payment charge does fit the definition of a "rate" because it is a charge

21   for the extension of credit.  Plaintiff's contrary suggestion, based on the claim that Verizon

22   Wireless's contract does not describe the charge as an alternative means of performance but as

23   damages for a breach of the contract, *see* Opp. at 6, is incorrect as a matter of law.  Regardless of

24   whether Verizon Wireless agreed with a customer in advance that it would offer credit service as

25   an alternative to timely payment, a late payment by a customer in fact forces Verizon Wireless to

26   extend credit to that customer beyond the contemplated term, and the fee is a charge for that

27   service, whether voluntary or not.  Section 332 is not limited to rates for services that the wireless

28   carrier agreed in advance to provide as part of the contract.  Thus, even if the late payment charge

1   were viewed as not an alternative means of performance,[1] there is no statutory basis for

2   distinguishing between rates for services that a customer is permitted to take under the contract

3   and rates for services that the carrier is forced to provide as a result of a customer's breach.

4          Moreover, the late payment charge is also a "rate" for wireless service because

5   "credit terms must be characterized as an inseparable part of the price." *Catalano, Inc. v. Target*

6   *Sales, Inc.*, 446 U.S. 643, 648 (1980).  In considering whether an agreement among competitors

7   not to extend credit violated the antitrust laws, the Court recognized the basic economic principle

8   that the timing of payment is an integral part of the price for a good or service: "It is virtually

9   self-evident that extending . . . credit for a period of time is equivalent to giving a discount equal

10  to the value of the use of the purchase price for that period of time." *Id.*  Judge Blumenfeld, who

11  dissented from the Ninth Circuit's contrary conclusion in *Catalano* that such an agreement did

12  not constitute "price-fixing," put the matter succinctly:

13          The purchase of goods creates an obligation to pay for them.  Credit
        is one component of the overall price paid for a product.  The cost
14      to a retailer of purchasing goods consists of (1) the amount he has
        to pay to obtain the goods, and (2) the date on which he has to make
15      that payment.  If there is a differential between a purchase for cash
        and one on time, that difference is not interest but part of the price.
16

17  *Catalano, Inc. v. Target Sales, Inc.*, 605 F.2d 1097, 1103 (9th Cir. 1979) (dissenting opinion),

18  *rev'd and remanded*, 446 U.S. 643 (1980); *see also Whirlpool Corp. v. U.M.C.O. Int'l Corp.*, 748

19  F. Supp. 1557, 1565-66 (S.D. Fla. 1990) (discrimination in credit terms may constitute violation

20  of statute prohibiting "discrimination in price").

21          Imposing a late payment charge of $5 is no different in economic terms than

22  quoting a price of a wireless service plan as $39.99 if paid within 30 days but $44.99 if paid

23  thereafter, or stating the price of a wireless service plan as $44.99 with a $5 discount if paid

24  _____

[1]  Verizon Wireless reserves the right to argue, if necessary, that the late fee is an alternative
25  means of performance.  In determining whether a provision constitutes alternative performance,
    courts "examine its true function and operation, *not the manner in which it is characterized in the*
26  *contract.*"  *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005) (emphasis
    added); *see also Blank v. Borden*, 11 Cal. 3d 963, 970-71 (1974) (courts "look to substance rather
27  than form in determining the 'true function and character'" of provision); *Kuhlemeier v. Lack*, 50
    Cal. App. 2d 802, 808 (1942) (holding that use of term "forfeit" in lease agreement is not
28  determinative).

1   within 30 days.  The substantive economic character of the arrangement is not altered if the price

2   is quoted as $39.99 with a $5 liquidated damage for late payment.  Nor is the economic reality

3   affected by whether Verizon Wireless's billing statement refers to the charge as liquidated

4   damages.  However it is expressed, the amount charged for late payment is part of the rate for

5   service.  Thus, far from having "only a tangential relationship to the actual rates for service"

6   (Opp. at 8 (quoting *Ball v. GTE Mobilnet of California*, 81 Cal. App. 4th 529, 539 (2000))), the

7   late payment charge, insofar as it determines the timing of payment and the fee for exceeding it, is

8   an integral part of Verizon Wireless's rate for wireless service.  For that reason, Plaintiff's

9   contention that "Congress did not preempt all claims that could possibly influence rates" (Opp.

10  at 3) misses the mark.  Plaintiff's claims do not seek to impose state law requirements that could

11  increase Verizon Wireless's costs of doing business and that may in turn lead to a price increase.

12  Rather, they directly attack the reasonableness of Verizon Wireless's rates themselves.

13          Finally, Plaintiff's claims impermissibly challenge Verizon Wireless's rate

14  structure.  Plaintiff appears to concede, as she must, that Verizon Wireless's late payment charge

15  would be immune from state law review for reasonableness under § 332 if it had been rolled into

16  its "up-front" rates, presumably the monthly plan fees.  *See* Opp. at 3, 11.  But § 332 precludes

17  states from dictating how a wireless carrier structures various elements of its rates to recover its

18  cost of providing service, such as the choice between spreading the costs of untimely payments

19  among all of its customers or imposing a separate charge on those who fail to timely pay their

20  bills.  *See* Motion at 12-13.  As the Court in *Keifer v. Paging Network, Inc.*, 50 F. Supp. 2d 681,

21  685 (E.D. Mich. 1999) recognized, that choice of a carrier's overall rate structure is a matter of

22  rates, not other "terms and conditions."

23      **B.      Plaintiff's Authorities Are Inapposite**

24          Plaintiff relies principally on *Brown*.  As explained above, the *Brown* court erred

25  in assuming, without analysis, that a liquidated damage provision could not also be a "rate"

26  within the meaning of § 332, the same error that pervades Plaintiff's Opposition.

27          Plaintiffs' reliance on cases holding that the Communications Act does not

28  completely preempt state law claims so as to support removal jurisdiction (*TPS Utilicom Servs.*,

1    *Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089 (C.D. Cal. 2002); *In re Wireless Tel. Radio Frequency*

2    *Emissions Prods. Liab. Litig.*, 327 F. Supp. 2d 554, 565 (D. Md. 2004); *In re Wireless Tel. Fed.*

3    *Cost Recovery Fees Litig.*, 343 F. Supp. 2d 838 (W.D. Mo. 2004)), is misplaced.  Verizon

4    Wireless has not sought to premise federal jurisdiction on a complete preemption theory: its

5    removal of the action, not challenged by Plaintiff, was based on the Class Action Fairness Act of

6    2005 ("CAFA").  Nor does Verizon Wireless contend that the Communications Act preempts all

7    state law claims by completely occupying the field, as would be required to support removal on

8    that basis.  Rather, having properly removed the case based on CAFA jurisdiction, Verizon

9    Wireless is now asserting its defense that § 332 preempts the specific type of claim asserted by

10   Plaintiff, namely, one that challenges the reasonableness of its rates under state law.

11           For that reason, *Esquivel v. Southwestern Bell Mobile Systems, Inc.*, 920 F. Supp.

12   713 (S.D. Tex. 1996), is irrelevant.  In *Esquivel*, as in other cases cited by Plaintiff, the court

13   considered only whether the doctrine of complete preemption would support removal jurisdiction

14   "in the same manner as those filed under the LMRA or ERISA." *Id.* at 715.  In concluding that

15   § 332 did not completely preempt state law, the court noted that preemption under § 332 "can be

16   asserted as a defense" (which Verizon Wireless has done here). *Id.*  Indeed, the court did not

17   even reach the express preemption defense, noting only that "it is not even clear that Plaintiff's

18   case is preempted," because it was unnecessary to resolve that issue in light of its finding that

19   there was no complete preemption. *Id.* at 716.  In addition, *Esquivel* involved early termination

20   fees, which were asserted not to be rates because they apply only on termination of service.  In

21   addition to its dubious merit,[2] that claim does not apply to late payment charges.

22

23   _____

24   [2]  Verizon Wireless submits that the early termination fee is part of its rate structure, and that any
     state law challenge to its validity is likewise preempted, but this case does not present that issue.

25   The FCC is currently considering in a declaratory relief proceeding whether § 332 applies to early
     termination fees.  *See* WT Docket No. 05-194, Petition of CTIA – The Wireless Association for

26   an Expedited Declaratory Ruling Concerning Wireless Early Termination Fees; WT Docket No.
     05-193, Petition for Declaratory Ruling Filed by SunCom Wireless Operating Company Seeking

27   Determination of Whether State Law Claims Regarding Early Termination Fees Are Subject to
     Preemption Under 47 U.S.C. § 332(c)(3)(A).

28

                                                    DEF. VERIZON WIRELESS'S REPLY BRIEF
                                                    ISO MOT. TO DISMISS FAC
                                                    C 07-03679 JSW

1    Likewise irrelevant are the cases cited by Plaintiff involving challenges to a

2    wireless carrier's disclosure practices (*Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069 (7th Cir.

3    2004) and *In re Wireless Tel. Fed. Cost Recovery*, 343 F. Supp. 2d 838). Unlike such claims,

4    Plaintiff's claims are directed to the substantive reasonableness of the late payment charge. As

5    the Seventh Circuit stated in *Fedor*, claims that require a court to "assess the reasonableness of

6    the rates charged" *are* preempted by § 332. 355 F.3d at 1074 (concluding that the claims at issue

7    in that case merely required the court to determine whether charges were "inconsistent with . . .

8    representations made by Cingular"); *see also NASUCA*, 457 F.3d at 1255 (finding that state

9    regulations that "pertain only to the *presentation* of [a] cost on customer bills" is not preempted)

10   (emphasis added). Plaintiff concedes this standard, *see* Opp. at 3 (noting that Congress

11   preempted claims "that involve the reasonableness or lawfulness of the rates themselves"), which

12   the Ninth Circuit very recently endorsed. *See Lozano v. AT&T Wireless Servs., Inc.*, --- F.3d ---,

13   Nos. 05-56466, 05-56511, slip op. at 12755 n.4 (9th Cir. Sept. 20, 2007)[3] (noting that "in order

14   for [plaintiff] to maintain his UCL claim, while avoiding [§ 322] preemption, his claim must be

15   tied to the unfairness of [the carrier's] disclosures regarding its billing practices, and not to the

16   billing practices themselves"). Nor does the First Amended Complaint allege that Verizon

17   Wireless engaged in misrepresentation of or failure to disclose the late payment charge. While

18   the Opposition refers in passing to the charge as a "covert fee[]" (Opp. at 11) and as serving to

19   "obscure" the rate (Opp. at 10), these suggestions are unsupported by the First Amended

20   Complaint and affirmatively refuted by the Customer Agreement attached to the First Amended

21   Complaint, which conspicuously discloses the late payment charge.[4]

---

[3] Available at
http://www.ca9.uscourts.gov/ca9/newopinions.nsf/2A87CA8016415A468825735C005BDFE1/$file/0556466.pdf?openelement.

[4] Plaintiff's Second Cause of Action is purportedly for "Deceptive Practices." *See* FAC at 8. However, the alleged deception consists of representing that the contract "involves . . . obligations" (presumably the late payment charge) "which are prohibited law" and "inserting an unconscionable provision in the contract." *Id.* ¶ 34(a) & (b). The claim, therefore, appears to be that Verizon Wireless represented that customers may be subject to the late payment fee, and that this representation is deceptive because the fee is allegedly unconscionable and prohibited by California Civil Code Section 1671(d). There is no claim that the charge was inadequately or misleadingly disclosed.

3645600.4                                    - 6 -                    DEF. VERIZON WIRELESS'S REPLY BRIEF
                                                                     ISO MOT. TO DISMISS FAC
                                                                     C 07-03679 JSW

C.     **Reference to State Law in Verizon Wireless's Contract Does Not Save Plaintiff's Claims from the Operation of Section 332**

Finally, Plaintiff erroneously suggests that § 332 has no application to Verizon Wireless's late payment charge as a matter of contract.  Verizon Wireless's customer service agreement provides: "If we don't receive payment in full when due we may, *to the extent permitted by the law of the state of the billing address we have on file for you at the time*, charge . . . a late fee…" FAC, Ex. B, p. 5 (emphasis added).  Plaintiff suggests that this provision requires Verizon Wireless to conform to state law requirements regarding the validity of its late payment charge, even if § 332 would otherwise preempt such requirements.

This argument begs the question.  The issue presented by this Motion is whether § 332 preempts state law requirements such as those of California Civil Code section 1671(d).  If the Court concludes that § 332 applies and preempts state law, then *there would be no state law* that could apply and prohibit (or permit) Verizon Wireless's late payment charge.  Only if the Court concludes that California Civil Code section 1671(d) is not preempted could that provision come into play.  Thus, the effect of the italicized language, if any, is completely subsumed with the preemptive effect of § 332.  Plaintiff also fails to explain how private contracts could alter the allocation of jurisdiction between federal and state governments, as determined by Congress.

In addition, even if Plaintiff's theory were accepted, California Civil Code section 1671(d) would apply only as a matter of contract.  But, while Plaintiff's First Cause of Action is nominally called "Breach of Contract," it does not in fact plead a contract claim.  The allegations of that cause of action (FAC ¶¶ 30-32) relate solely to an alleged violation of Civil Code Section 1671(d) and contains no allegations about breach of a contractual obligation.  As such, that claim must also be dismissed.  *See Ananda Church of Self-Realization v. Mass. Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1281 (stating the "well-established principle that a court is not bound by the captions or labels of a cause of action in a pleading" and that the "nature and character of a pleading is to be determined from the facts alleged, not the name given by the pleader to the cause of action").  The other claims asserted in the First Amended Complaint are, on their own terms, based on *statutory* violations predicated on Civil Code section 1671(d).  *See* FAC ¶ 34 (CLRA

1   claim); *id.* ¶ 41 (UCL "unlawful" claim based on violation of Civil Code section 1671(d) and

2   "unfair" claim based on unreasonableness of the charge). As shown above, the application of

3   those statutes to Verizon Wireless's late fee is preempted by § 332. Plaintiffs' suggestion that the

4   *contract* incorporates section 1671(d), even if it had merit, would not Plaintiffs' claims from

5   dismissal.

6   **III.    CONCLUSION**

7          For the foregoing reasons, the Court should dismiss the FAC with prejudice.

8

9   DATED: September 2/ , 2007                    Munger, Tolles & Olson LLP
                                                      HENRY WEISSMANN
10                                                    HOJOON HWANG
                                                      DANIEL J. POWELL
11

12                                              By:_____
                                                         HOJOON HWANG
13

14                                              Attorneys for Defendant
                                                CELLCO PARTNERSHIP (D/B/A VERIZON
15                                              WIRELESS)

16

17

18

19

20

21

22

23

24

25

26

27

28