IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CATHERINE GELLIS, individually and on behalf of all others similarly situated,

  Plaintiff,

v.

VERIZON COMMUNICATIONS, INC., et al.,

  Defendants.

No. C 07-03679 JSW

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

  Now before the Court is the motion to dismiss filed by defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon Wireless"). Having carefully reviewed the parties' papers and considered their arguments and relevant legal authority, the Court hereby DENIES Verizon Wireless's motion to dismiss.[1]

**BACKGROUND**

  Plaintiff Catherine Gellis ("Gellis") brings this purported class action to challenge the late fees charged by Verizon Wireless. On September 21, 2006, Gellis entered into a two-year agreement with Verizon Wireless for mobile phone and data service. (First Amended Complaint ("FAC"), ¶ 12.) On that date, Gellis signed a short form agreement in which Gellis agreed to the current Verizon Wireless Customer Agreement, which in turn provides, in pertinent part:

---

[1] Gellis requests that the Court take judicial notice of Verizon Wireless's billing statement in which Verizon Wireless describes its late fee as liquidated damages. Although Verizon Wireless does not object, the Court finds that this document is not judicially noticeable under Federal Rule of Evidence 201. Accordingly, the Court DENIES Gellis' request for judicial notice.

> Payment is due in full as stated on your bill. IF WE DON'T RECEIVE PAYMENT IN FULL WHEN DUE, WE MAY, TO THE EXTENT PERMITTED BY LAW OF THE STATE OF THE BILLING ADDRESS WE HAVE ON FILE FOR YOU AT THE TIME, CHARGE A LATE FEE OF UP TO 1.5 PERCENT A MONTH (18% ANNUALLY), OR A FLAT $5 A MONTH, WHICHEVER IS GREATER, ON UNPAID BALANCES.

(*Id*., ¶¶ 13, 14.)

In mid-December of 2006, Gellis received a bill from Verizon Wireless for $131.59 which was due by January 8, 2007. (*Id*., ¶ 17.) Gellis failed to pay the stated amount by the due date. (*Id*.) In mid-January of 2007, Gellis received another bill from Verizon Wireless. This bill was for $268.49, which consisted of $131.59 from the previous bill, a $5 late fee, and $131.90 for the next month's bill, and had a due date of "past due." (*Id*., ¶¶ 18, 19.) On January 17, 2007, Gellis paid the entire amount due. (*Id*., ¶ 19.)

Gellis alleges that $5 late fee violates state law, and thus brings the following claims against Verizon Wireless: (1) violation of California Civil Code § 1671; (2) violation of California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; (3) violation of California Business and Professions Code §§ 17200, *et seq.*; (4) unjust enrichment; and (5) declaratory relief. Verizon now moves to dismiss all of Gellis' claims on the grounds that such state law claims are preempted by section 332 of the Federal Communications Act, 47 U.S.C. § 332(c)(3)(A) ("Section 332").

**ANALYSIS**

**A. Legal Standards Applicable to Motions to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss are viewed with disfavor and are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). "A complaint may be dismissed for one of two reasons: (1) lack of a cognizable theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving

2

1  party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794
2  F.2d 478, 481 (9th Cir. 1986).

**B.     Gellis's State Law Claims are not Preempted.**

Section 332 provides in pertinent: "[N]o State or local government shall have any authority to regulate the entry of or the rates charged by commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). Verizon Wireless argues that its late fee is a rate charged, or is part of its rate structure, and is thus preempted by Section 332. Gellis counters that the late fee constitutes liquidated damages and thus falls within the "other terms and conditions" which is not preempted by Section 332.

Rate is "[a]n amount paid or charged for a good or service." *National Ass'n of State Util. Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1254 (11th Cir. 2006) (quoting Black's Law Dictionary 1268 (7th ed. 1999)). Verizon Wireless argues that its late fee is a "rate" under this definition because it is a charge for the service of extending credit to a customer beyond the due date for a bill. (Mot. at 7.) The only other federal court which has addressed this issue concluded that charges imposed when bills were not paid on time were a penalty for failing to submit timely payment, not a fee for use of cellular phones, and thus did not qualify as "rates." *Brown v. Washington/Baltimore Cellular, Inc.*, 109 F. Supp. 2d 421 (D. Md. 2000). In an analogous context, another court concluded that charging liquidated damages for early termination of service was a "term and condition," rather than a "rate," under Section 332. Therefore, the court held that the state law claims challenging the early termination fee were not preempted. *Esquivel v. Southwestern Bell Mobile Sys., Inc.*, 920 F. Supp. 713, 715 (S.D. Tex. 1996); *see also Phillips v. AT&T Wireless*, 2004 WL 1737385, *10 (S.D. Iowa, July 29, 2004) (finding that early termination fee was not a "rate" but was an "other term or condition").

Verizon Wireless's reliance on *Gilmore v. Southwestern Bell Mobile System, Inc.*, 156 F. Supp. 2d 916 (N.D. Ill. 2001), is misplaced. In *Gilmore*, the court held that state law claims challenging a wireless carrier's "Corporate Account Administrative Fee" were preempted. *Id.* at 924-25. However, in that case, the plaintiff did not allege that the fee at issue was a charge

3

1  for something other than the provision of services. *Id.* at 923 n.8. Moreover, the court found
2  that the plaintiff's allegations "explicitly raise[d] the issue of whether it received sufficient
3  services in return for the [f]ee." *Id.* at 924. Consequently, the court found that the plaintiff's
4  claims raised a rate issue. *Id.* In contrast, here, Gellis specifically alleges that the fee was
5  imposed as a penalty, not as a charge in return for services she obtained. Therefore, the Court
6  rejects Verizon Wireless's argument, and finds that the late fee is not charged in exchange for
7  providing any service, but instead, is imposed as a penalty for failing to pay bills on time.

8  Nor does Verizon Wireless' argument that the late fee was part of the company's rate
9  structure fare any better. In reliance on *Kiefer v. Paging Network, Inc.*, 50 F. Supp. 2d 681
10 (E.D. Mich. 1999), Verizon Wireless argues that a state law regulates rates when it seeks to
11 regulate how a carrier recovers its costs of doing business. According to Verizon Wireless, it
12 incurs costs when customers fail to pay their bills on time and the state law claims challenging
13 its late fee impermissibly interfere with Verizon Wireless's decision regarding how it seeks to
14 recover these costs. (Mot. at 13-14.)

15 In *Kiefer*, the plaintiff alleged that a company's late fee was unjust and unreasonable
16 pursuant to Section 201(b) of the Federal Communications Act.[2] *Kiefer*, 50 F. Supp. 2d at 681.
17 The court found that, under the doctrine of primary jurisdiction, the plaintiff's Section 201(b)
18 claims should be referred to the Federal Communications Commission to determine whether the
19 defendant's practice violated federal law. *Id.* The court rejected the plaintiff's argument that
20 the late fee should be construed as a liquidated damage term and condition, "rather than as a
21 'charge or practice' whose reasonableness is to be assessed under Section 201(b)" because the
22 plaintiff's complaint asserted Section 201(b) reasonableness claims. *Id.* at 685. The court
23 further reasoned that the late payment charge at issue was part of the overall rate structure and
24 not merely a "term and condition" of the parties' service contract. The court found:

---

[2] Section 201(b) of the Federal Communications Act provides in pertinent part: "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b).

4

> Plaintiff's argument ignores the fact that a service provider's overall rate structure can take several forms; *i.e.*, it can spread the costs of untimely payments among its customers by charging everyone an increased rate, or it can include in its overall rate structure a separate charge for untimely payments that are to be imposed solely on those customers who fail to timely pay their bills. Defendant chose the latter of these two options to be included in its overall rate structure.

*Id.* at 865.

Significantly, Section 201(b) is broader than Section 322. It covers all "charges" and "practices," rather than just "rates." Undoubtedly, the late fee at issue here would constitute a "charge" under Section 201(b). The issue here, however, is whether the fee qualifies as a "rate" under Section 322. The Court thus finds the reasoning in *Kieffer* inapposite.

The court in *Phillips* rejected an argument similar to the one proffered by Verizon Wireless when it determined that an early termination fee was not a "rate." The court held that although the wireless carrier made a compelling argument that its early termination fee was an integral party of its rate structure and thus any challenge to those fees was a challenge to its rates, "rate" must be narrowly defined. *Phillips*, 2004 WL 1737385, *10. Otherwise, if rates were construed as broadly as the defendants urged, "there [would be] no ability to draw a line between economic elements of the rate structure and normal costs of operating a telecommunications business that have no greater significance than as factors to be considered in determining what will ultimately be required of rates to provide a reasonable return on the business investment." *Id.*; *cf. National Ass'n of State Util. Consumer Advocates*, 457 F.3d at 1255-56 (concluding "[t]hat the prohibition or requirement of a line item has some effect on the charge to the consumer does not necessarily place a regulation within the meaning of 'rates' and outside the ambit of state regulation of 'other terms and conditions.'... The inclusion of the specific component[] ... 'rate structures' within the general term 'rates' does not magically expand the ... statutory language ....").

The Court agrees with the reasoning in *Phillips* and finds that the term "rate" must be construed narrowly. Assuming that Verizon Wireless does incur costs when customers fail to pay their bills on time, the company chose to recover such costs through imposing a late fee unrelated to the provision of any services, as opposed to raising its rates generally. If the Court adopted Verizon Wireless's reasoning, any charge imposed by a wireless carrier to recover

5

1 costs and make a profit would qualify as a "rate," regardless of whether it was imposed in
2 exchange for providing service or not. Although Section 332 could have preempted the
3 regulation of any "charge," it only preempts the regulation of "rates." Therefore, the Court
4 finds that Gellis's state law claims challenging Verizon Wireless's late fee do not challenge the
5 company's "rates," and thus are not preempted by Section 332.

## CONCLUSION

For the foregoing reasons, the Court DENIES Verizon Wireless's motion to dismiss.

**IT IS SO ORDERED.**

Dated: November 5, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE