IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSEPH RUWE and ELIZABETH ORLANDO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CELLCO PARTNERSHIP, d/b/a VERIZON COMMUNICATIONS, INC. ET AL,

Defendant.

No. C 07-03679 JSW

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Now before this Court is the motion to dismiss filed by defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon Wireless"). Having carefully reviewed the parties papers and considered their arguments and relevant legal authority, the Court hereby DENIES Verizon Wireless's motion to dismiss. The Court finds this matter suitable for disposition without oral argument. N.D. Civil L.R. 7-1(b). Accordingly, the hearing set for March 20, 2009 at 9:00 a.m. is HEREBY VACATED.

**BACKGROUND**

Plaintiffs Joseph Ruwe ("Ruwe") and Elizabeth Orlando ("Orlando") bring this purported class action to challenge the late fees and reconnect fees charged by Verizon Wireless. In approximately August 2006, Ruwe entered into a two-year agreement with Verizon Wireless for mobile phone and data services. (Third Amended Complaint ("TAC") at ¶ 8.) In approximately 2003, and again in 2005, Orlando entered into two-year agreements with

1  Verizon Wireless for mobile phone and data services. (*Id*. at ¶ 9.) As a result of these
2  agreements, Ruwe and Orlando were subject to the terms and conditions set forth in the Verizon
3  Wireless Customer Agreement, which provides in pertinent part:

> **Charges and Fees We Set**
> You agree to pay all access, usage, and other charges and fees we bill you or that the user of your wireless phone accepted... You may have to pay fees to begin service or reconnect suspended service.

(*Id*. at ¶ 10.)

> **Your Bill**
> Your bill is our notice to you of your fees, charges, and other important information... We bill usage charges after calls are made or received. We bill access fees and some other charges in advance.

(*Id*.)

> **Our Rights To Limit Or End Service Or This Agreement**
> WE CAN, WITHOUT NOTICE, LIMIT, SUSPEND, **OR END** YOUR SERVICE OR ANY AGREEMENT WITH YOU FOR... GOOD CAUSE, including but not limited to: (a) paying late more than once in any 12 months...

(*Id*.)

When a customer fails to make timely payment, Verizon Wireless may "hotline" or "suspend" that customer's service. (*Id.* at ¶ 21.) Hotlining impairs a customer's service by redirecting outgoing calls to Verizon Wireless financial customer service rather than the customer's intended recipient, whereas suspension blocks customers from receiving in-bound calls. (*Id.*) These impairment methods are distinct from disconnection. (*Id*. at ¶ 23.) After a customer's service has been suspended, he must pay a reconnect fee for normal service to resume. (*Id.* at ¶ 22.) On at least one occasion, Verizon Wireless impaired Rowe's and Orlando's service due to late payment, and charged each a $15 reconnect fee per line. (*Id*. at ¶¶ 14, 16.)

Plaintiffs allege that the $15 reconnect fee violates California law, and on that basis bring the following claims against Verizon Wireless: (1) violation of California Civil Code § 1671; (2) violation of the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; (3) unjust enrichment; and (5) declaratory relief. Verizon Wireless now moves

to dismiss these claims as they pertain to the $15 reconnect fee on the grounds that Plaintiffs have failed to state a claim that the reconnect fee is a liquidated damages provision in violation of California Civil Code § 1761, and that such state law claims are preempted by section 332 of the Federal Communications Act, 47 U.S.C. § 332(c)(3)(A) ("Section 332").

## ANALYSIS

### A. Legal Standards Applicable to Motions to Dismiss.

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal upon the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A district court should grant a motion to dismiss if the plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level ..." *Twombly*, 550 U.S. at 556 (citations omitted). In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible. *Id.* at 570.

### B. Plaintiffs' Reconnect Fee Claims are Not Preempted by the FCA.

Section 332 provides in pertinent part: "[N]o State or local government shall have any authority to regulate the entry of or the rates charged by commercial mobile service or any private mobile service except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). Thus, the FCA grants the Federal Communications Commission (the "FCC") exclusive authority to

3

regulate rates charged by wireless service providers, but reserves the power of the states to regulate all other terms and conditions. *Id*. Verizon Wireless argues that its reconnect fee is a rate charged for a service, and is thereby preempted by Section 332. Plaintiffs argue that the reconnect fee is an "other term and condition," and is therefore not preempted by Section 332.

Whether or not the reconnect fee is a rate determines whether Plaintiffs' claims are preempted. The term "rate" is not defined in the FCA. In its prior order this Court defined rate as "[a]n amount paid or charged for a good or service." (Order Denying Defendant's Motion to Dismiss ("Order") at 3). The Supreme Court has explained that in analyzing whether any charge is considered a rate, it is important to determine whether the purported rate is in exchange for a service, and what that service is. *Am. Tel. & Tel. Co. v. Central Office Tel.*, 524 U.S. 214, 223 (1998) (finding that rates "have meaning only when one knows the services to which they are attached"). Moreover, the term "rate" should be construed narrowly. *Phillips v. AT&T Wireless*, 2004 WL 1737385, *10 (S.D. Iowa July 29, 2004). Thus, this Court previously held that the term "rate," as it is used in Section 332, does not include late fees charged by Verizon Wireless. (Order at 6.)

Given this definition of "rate" under Section 332, the Court must determine whether the reconnect fee is an amount paid for the service of reactivation, as Verizon Wireless contends. Here, the purported service is "an automated process whereby Verizon Wireless stops impairing service." (TAC at ¶ 22.) The Court finds no case law elaborating on the meaning of "service" in this context. Service is commonly understood as "doing something useful for a person or company for a fee." *Black's Law Dictionary* 1399 (8th ed. 2004). Here, Verizon Wireless contends it provides a service by allowing normal service to resume. This is allegedly achieved by the "flip[ping] of an automated switch." (Opp. Br. at 1; Reply Br. at 7.) The customer, in order to resume normal, unimpaired service pays both the unpaid balance and reconnect fee. (TAC at ¶ 22.) This payment of the outstanding monthly fees is what would be charged in exchange for normal mobile services. The reconnect fee paid by the customer, as characterized by Verizon Wireless, is essentially charged for the same service, suggesting that it is actually a late fee, rather than a separate charge for service.

4

Beside this Court's definition, Plaintiffs also point to other indicia used by courts when determining whether a charge is considered a "rate." For example, charges based on units of time may indicate the charge is considered a rate. *See Ball v. GTE Mobilnet*, 81 Cal. App. 4th 529, 538 (2000) (noting that the "element of time can no more be divorced from rate than a clock from its hands"). In contrast, where a challenged billing practice has only a tangential relationship to the actual rates for service paid by customers, some courts have held that the charge is not a rate. *See In re Comcast Cellular Telecommunications Litigation*, 949 F. Supp. 1193, 1201 (E.D. Pa. 1996) (noting that several courts have found state claims challenging the fairness of a billing practice not completely preempted where the billing practices at issue "had only a tangential relationship to the actual rates for service paid by customers"). Under similar reasoning, several courts have determined in published opinions that early termination fees do not constitute rates. *See, e.g., Esquivel v. Southwestern Bell Mobile Sys., Inc.*, 920 F. Supp. 713, 715 (S.D. Tex. 1996); *Phillips*, 2004 U.S. Dist. LEXIS 14544, at *36; *Iowa v. United States Cellular Corp.*, No. 4-00-CV-90197, 2000 U.S. Dist. LEXIS 21656 (S.D. Iowa Aug. 7, 2000); *Cedar Rapids Cellular Tel., L.P. v. Miller*, No. C00-58 MJM, 2000 U.S. Dist. LEXIS 22624, at *21 (N.D. Iowa Sept. 15, 2000) (all declining to read "rate" so broadly as to preempt completely plaintiffs' claims that early termination fees violate state consumer protection laws). Plaintiffs rely on these cases to support their argument that the reconnect fee should similarly not be considered a rate. Taking these other indicia into consideration, the Court finds further evidence that the reconnect fee bears qualities that distinguish it from a rate within the meaning of Section 332. Unlike the typical monthly rates charged to mobile services customers, the reconnect fee is allegedly only charged in the event that a customer's account is suspended. (TAC at ¶ 22.) Thus, it is not charged in the normal course of the customer's relationship with Verizon Wireless. Moreover, the reconnect fee, as Plaintiffs point out, is buried in the "Terms and Conditions" portion of the Customer Agreement, unlike the monthly rate plans advertised by Verizon Wireless. (TAC at ¶ 11; Ex. B.) Thus, the reconnect fee, like early termination and late fees, similarly bears only a tangential relationship to the actual rates charged for mobile services. This, together with the narrow construction of "rate," indicates that the reconnect fee

5

cannot be accurately described as a rate.

Finally, Verizon Wireless analogizes the reconnect fee to the activation fee charged to customers when they initially sign up for wireless service. Verizon Wireless argues that because the FCC recognizes activation fees as part of the "price" for cellular service, the reconnect fee is likewise a "price" for service, and therefore should be considered a rate. (Mot. at 13.) The FCC cases cited by Verizon Wireless do not explicitly find either activation fees or reconnect fees to be "rates." Rather, the FCC has only referred to activation fees in the context of cellular prices. *See In the Matter of Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993*, 10 F.C.C.R. 8844, 8868 at ¶ 70, 1995 WL 1086279 (F.C.C. Aug. 18, 1995) (noting activation "fees" may be part of "cellular prices"); *see also In the Matter of Petition of California and the Pub. Utilities Comm'n to Retain Regulatory Authority over Intrastate Cellular Service Rates*, 10 F.C.C.R. 7486, 7540 at ¶ 122, 1995 WL 314451 (F.C.C. May 19, 1995) (referring to activation fees in the context of cellular prices). Thus, while the FCC has discussed activation fees in the context of mobile service prices on at least two occasions, it does not necessarily follow that the FCC considers activation fees, and based on Verizon Wireless's argument, reconnect fees, as rates under Section 332. Given the narrow construction of the term, the Court is reluctant to adopt this reasoning.

Notwithstanding the fact that the FCC has not explicitly defined "rate" to encompass activation fees, such fees are sufficiently distinct from the reconnect fee at issue here. Activation fees, as alleged by Plaintiffs, are charged at the start of a mobile services contract to all customers entering into a contract with Verizon Wireless. In contrast, reconnect fees are only charged to customers whose service has been suspended, but are still under contract, in order to resume normal service. In light of the foregoing discussion and these differences, the Court is not persuaded by Verizon Wireless's activation fee analogy. To conclude, considering the qualities of the reconnect fee and the narrow construction of the term "rate" in this context, the Court finds the reconnect fee is not a rate within the meaning of Section 332. Instead, the reconnect fee more accurately falls within the "other terms and conditions" not preempted by Section 332.

### C. The Reconnect Fee is Liquidated Damages.

Having found that the reconnect fee is not a rate and that Plaintiffs' state law claims are not preempted by Section 332, the Court must determine whether Plaintiffs' second cause of action, alleging violation of California Civil Code section 1671 ("Section 1671") should be dismissed for failure to state a claim. Section 1671 provides, in pertinent part: "[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). Whether a contractual provision is an unenforceable liquidated damages provision is a question for the court. *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005) (quoting *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1393 (1991) (quotation marks omitted)). Verizon Wireless contends Plaintiffs fail to allege that the reconnect fee is charged in order to remedy a breach of the customer's contractual obligation, and therefore fail to state a claim under Section 1671. (Mot. at 6.) Plaintiffs, on the other hand, contend that the reconnect fee charged pursuant to the Customer Agreement is an illegal penalty because the $15 amount charged far exceeds the damages caused by late-paying customers, and therefore fails to reflect a reasonable effort to estimate such damages. (TAC at ¶¶ 1, 24-26, 39-40.)

In order to maintain a Section 1671 claim, Plaintiffs must allege sufficient facts demonstrating that the reconnect fee constitutes liquidated damages. California courts define liquidated damages as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002). Thus, to constitute liquidated damages, the contractual provision must: (1) arise from a breach, and (2) provide a fixed and certain sum. *Id*. The parties disagree as to whether breach triggers the imposition of the reconnect fee. Verizon Wireless argues the triggering event is not the act of nonpayment, but the customer's choice to reactivate their mobile services. Even if breach is determined to be the triggering event, Verizon Wireless argues the reconnect fee should still not be considered liquidated damages because it is not fixed and certain. The Court will address each of these issues in turn.

7

### 1. The Reconnect Fee is Triggered by Breach.

First, the Court must determine whether Plaintiffs allege sufficient facts to demonstrate that breach triggers the imposition of the reconnect fee. As alleged by Plaintiffs, the terms of the Customer Agreement state that "[p]ayment is due in full as stated on [one's] bill." (TAC at ¶ 10.) Under the Customer Agreement, Verizon Wireless reserves the right to impose late fees on unpaid balances, and it may also limit, suspend, or end service for good cause, including late payment more than once in any twelve months. (*Id.*) Finally, the Customer Agreement states that customers "may have to pay fees to begin service or reconnect suspended service." (*Id.*) The plain language of the Customer Agreement, provided by Plaintiffs in their complaint, demonstrates that nonpayment is breach under the terms of the contract. Moreover, this type of breach is necessary in order for a customer to be subject to reconnect fees.

Despite the fact that breach must occur in order for reconnect fees to be imposed, Verizon Wireless argues the reconnect fee should not be considered liquidated damages because the event triggering the imposition of the fee is the breaching customer's choice to reactivate service, not nonpayment. (Mot. at 7.) Plaintiffs counter that the reconnect fee is unequivocally imposed to penalize the customer and induce prompt payment of the unpaid balance. (Opp. Br. at 5-7.) Verizon Wireless relies on *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913 (1985), in support of its argument that the appropriate triggering event here is not breach. In *Perdue*, the California Supreme Court rejected a challenge to overdraft fees under Section 1671 on the basis that the act of writing a check with insufficient funds in one's bank account did not constitute breach. *Id.* at 932. There, the Court found that the bank customer never agreed to refrain from writing such checks, and as a result, the act did not constitute breach. *Id.* Plaintiffs fail to address this authority, but the Court nonetheless finds that the case is not controlling. In *Morris v. Redwood Empire Bancorp*, a California Court of Appeal explained that *Perdue* illustrated that "to constitute a liquidated damages clause the conduct triggering the payment must in some manner breach the contract." 128 Cal. App. 4th at 1315. Here, unlike *Perdue*, the customer's breach precedes the imposition of the alleged liquidated damages. As alleged by Plaintiffs, the Customer Agreement explicitly sets forth the actions that Verizon Wireless may pursue in the

8

event of nonpayment. One such repercussion may be having one's services suspended. (TAC at ¶ 10.) In order to resume normal service, a customer "may have to pay fees to ... reconnect suspended service." (*Id*.) The imposition of the reconnect fee is thus triggered by nonpayment, which, as stated above, Verizon Wireless concedes constitutes breach under the Customer Agreement. (Mot. at 2.)

Despite conceding that breach does in fact precede the imposition of the reconnect fee, Verizon Wireless maintains that the reconnect fee is triggered by alternative performance by the customer, rather than nonpayment, and therefore cannot constitute liquidated damages. "Performance cannot be said to be in the alternative where breach of a former covenant is necessary to give effect to a later covenant." *Garrett v. Coast and S. Fed. Sav. and Loan Ass'n.*, 9 Cal. 3d 731, 738 n.6 (1973). In *Garrett*, borrowers challenged a bank's imposition of late charges on outstanding loan balances as penalties in violation of California law. The bank countered that the late fees (in the form of additional interest) charged to the borrowers "merely [gave] a borrower an option of alternative performance of his obligation." *Id*. at 735. The California Supreme Court rejected the bank's characterization of the late fees, finding that California courts have "consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures." *Id*. at 737. Verizon Wireless's argument is similar to the bank's in *Garrett* in that it contends that the Plaintiffs are merely electing to exercise alternative performance under the contract -- reactivation. Like the *Garrett* Court, this Court finds the most prudent approach is to ascertain the substance of the parties' arrangements. In sum, Plaintiffs have sufficiently alleged that the reconnect fee is triggered by breach.

**2.     The Reconnect Fee is Fixed and Certain.**

Next, the Court must determine whether the $15 charge is "fixed and certain" within California's definition of liquidated damages. Under California law, liquidated damages involve "a sum of which is fixed and certain by agreement." *Chodos*, 292 F.3d at 1002. The requirement that liquidated damages be fixed and certain arises out of the concern that parties possess some degree of certainty regarding their liability in the event of a breach. *See Better Food Markets, Inc. v. Am. Dist. Tel. Co.*, 40 Cal. 2d 170, 184 (1953) (rejecting a challenge to a

1 liquidated damages provision on the basis that damages would have been impracticable or
2 extremely difficult to ascertain at the time the parties entered into a service contract for a
3 burglary alarm system). Plaintiffs assert that the sum of the reconnect fee satisfies this
4 requirement, as they and the purported subclass were each charged the same $15 sum to
5 reconnect their service. Verizon Wireless maintains that the reconnect fee fails to satisfy this
6 requirement, and points out that the reconnect fee does not apply to each customer whose
7 services have suspended, but only to those who elect to reactivate service.

8 Verizon Wireless contends the reconnect fee is not fixed and certain because it applies
9 only to some customers: those with suspended service who elect to reactivate their accounts.
10 Because some customers may elect to terminate their contract and pay an early termination fee,
11 rather than pay the reconnect fee and reactivate their service, Verizon Wireless argues the
12 manner in which the reconnect fee is applied is neither fixed nor certain. Plaintiffs counter that
13 "[t]he choice between one liquidated damages fee (the early termination fee) or another (the
14 reconnect fee) is no choice at all." (Opp. Br. at 7.) Further, Plaintiffs point out that the fixed
15 and certain requirement explicitly concerns the *sum* of the liquidated damages; it does not
16 require that the *application* of liquidated damages be fixed and certain. (*Id*.) The Court finds
17 that the fixed and certain requirement, as articulated by California case law, concerns the sum,
18 and not the application, of liquidated damages. *See Kelly v. McDonald*, 98 Cal. App. 121, 125
19 (1929) ("[t]he term 'liquidated damages' is used to indicated an amount of compensation to be
20 paid in the event of a breach of contract, *the sum of which is fixed and certain* by agreement")
21 (emphasis added), *overruled in part on other grounds, McCarthy v. Tally*, 46 Cal. 2d 577
22 (1956). Here, Plaintiffs and the purported subclass members allege to have all paid the same
23 amount for reconnection. Although the Customer Agreement does not specify the specific
24 amount, all customers electing to reconnect suspended service are charged the same $15 fee.
25 Although Verizon Wireless could presumably increase or decrease the sum under its Customer
26 Agreement, were it do so, the same flat fee would be charged to all customers reconnecting
27 suspended service, resulting in a sum that is both fixed and certain. Therefore, a customer
28 entering into an agreement with Verizon Wireless is certain as to his liability in the event of

10

breach, which is one of the primary purposes of liquidated damages provisions. If a customer's service is suspended due to nonpayment, the Customer Agreement provides that he is subject to a reconnect fee, and this fee is the same for all customers similarly situated. (*See* TAC at ¶ 10.) In sum, Plaintiffs have adequately alleged facts demonstrating that the reconnect fee is fixed and certain. Therefore, the Court concludes that the reconnect fee constitutes liquidated damages and finds that Plaintiffs have alleged sufficient facts in support of their Section 1671 claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES Verizon Wireless's motion to dismiss.

**IT IS SO ORDERED.**

Dated: March 18, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE