Steve W. Berman (*Pro Hac Vice*)
Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
steve@hbsslaw.com
jefff@hbsslaw.com
shanas@hbsslaw.com

Mark Chavez (90858)
Nance F. Becker (99292)
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA  94941
Telephone:  (415) 381-5599
Facsimile:  (415) 381-5572
mark@chavezgertler.com
nance@chavezgertler.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH RUWE and ELIZABETH ORLANDO, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Defendant. | No. 07-cv-03679 JSW<br><br>PLAINTIFFS' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT<br><br>Date:  November 16, 2012<br>Time:  9:00 a.m.<br>Dept:   Courtroom 11, 19th Floor<br>Judge: Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .......................................................................................................................1

    A. Mr. Kideys' and Mr. Waddington's Complaints that the Class Is Recovering Too Little and Too Much (Respectively) Are Not Grounds to Deny Recovery to the Entire Class..............................................................................1

    B. Requests from Two Additional Class Members, Mr. Huff and Mr. Quezada, Should Be Treated as Requests for Exclusion.............................................2

    C. The Proposed *Cy Pres* Distribution and Recipient Match the Underlying Objectives of this Lawsuit, Are Aligned with the Interests of Class Members, and Will Benefit a Class Not Remote from the Settlement Class .............4

        1. The Objection to the *Cy Pres* Recipient Is Speculative – Distribution Will Only Be Made if Class Members Do Not Cash Their Checks............................................................................................................4

        2. The Proposed *Cy Pres* Meets the Required Nexus to the Class ......................5

            a. The Proposed Recipient Meets the Objections of the Underlying Statutes and the Interests of Silent Class Members Because Financial Literacy Is Critical to Understanding the Economic Consequences of Liquidated Damages Penalties................................................................................5

            b. The Proposed Distribution Will Not Benefit a Group Too Remote from the Plaintiff Class ..........................................................6

    D. The Objections of Class Members Poindexter, Perle and Palmer to Plaintiffs' Attorneys' Fees Are Unfounded................................................................7

        1. The Degree of Difficulty in the Litigation ........................................................8

        2. Plaintiffs Invested a Significant Amount of Time in this Litigation ...............8

        3. The Results Achieved Are Outstanding ...........................................................9

    E. Objectors Poindexter, Perle and Palmer Are Represented by "Professional" Objector's Counsel and Any Request for Fees Should Be Denied.........................................................................................................................9

III. CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-10395, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) .............................. 10

*Browning v. Yahoo! Inc., et al.*,
  2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ...................................................... 10

*Dennis v. Kellogg Co.*,
  2012 U.S. App. LEXIS 18576 (9th Cir. Sept. 4, 2012) ..................................................... 5, 6, 7

*Glass v. UBS Fin. Servs.*,
  2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ............................................................ 3

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
  586 F.Supp. 2d 732 (S.D. Tex. 2008) ........................................................................................ 2

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ........................................................ 1

*In re Mego Fin. Corp. Secs. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................... 1

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
  2011 U.S. Dist. LEXIS 55351 (N.D. Cal. May 17, 2011) ........................................................ 3

*In Re: Currency Conversion Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ....................................................................................... 10, 11

*Jenson v. Cont'l Fin. Corp.*,
  591 F.2d 477 (8th Cir. 1979) .................................................................................................... 3

*Mayfield v. Barr,*
  985 F.2d 1090 (D.C. Cir. 1993) ................................................................................................ 3

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) .................................................................................................. 7

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .............................................................................................. 4, 5

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................................... 1

*The Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................................... 1

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................................................. 1

**FEDERAL STATUTES**

Federal Communications Act of 1934 ................................................................................................. 9

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................................ 9

Fed. R. Civ. P. 23 .............................................................................................................................. 3, 4

Fed. R. Civ. P. 23(e)(5) ........................................................................................................................ 3

## STATEMENT OF ISSUES

1. Whether the objections of two class members, Mr. Ian Kideys and Mr. Bill Waddington, to the size of the settlement fund are grounds to withhold recovery from the entire class.

2. Whether the requests from two additional class members, Mr. William Huff and Mr. Zenaido Quezada, should be treated as requests for exclusion.

3. Whether the objections of three Class Members, Mr. Poindexter, Mr. Perle and Mr. Palmer, to the proposed *cy pres* recipient, The California Council on Economic Education, which seeks to educate the citizens of California on economic literacy, are grounds to reject the settlement.

4. Whether the general objections of three class members, Mr. James J. Poindexter, Mr. Cery Perle and Mr. Jeffrey Palmer, to the degree of difficulty in the litigation, the time and labor expended by counsel, and the results achieved are grounds to deny plaintiffs' attorneys' fees.

5. Whether three class member objectors, Mr. Poindexter, Mr. Perle and Mr. Palmer, are represented by "serial" or "professional" objector's counsel, and any request for fees should be denied.

I. INTRODUCTION

Although the overwhelming response of class members to this settlement was positive, five class members have served objections relating to this settlement. Three are represented by the same counsel – Mr. Darrell Palmer – who is a "professional" objector. Regardless, none of the objections provides a ground to deny final approval of the settlement or plaintiffs' request for attorneys' fees and costs. Through aggressive and unfailing advocacy, plaintiffs here have recovered a substantial amount of money on behalf of the class. The objectors do not present any reasonable grounds to withhold this money from the class and require the class to start anew in settlement negotiations. Respectfully, plaintiffs request that this Court approve the settlement.

II. ARGUMENT

**A. Mr. Kideys' and Mr. Waddington's Complaints that the Class Is Recovering Too Little and Too Much (Respectively) Are Not Grounds to Deny Recovery to the Entire Class**

The first objector, Mr. Ian Kideys claims, without support, that the estimated $7.25 recovery per class member is inadequate and that "class counsel does not justify their failure to recover significant damages."[1] Respectfully, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery [does] not *per se* render the settlement inadequate or unfair."[2] But in addition, as estimated above, class members are likely to recover ***69 percent*** of their damages in this action – certainly significant damages by most measures. And although Mr. Kideys complains that the attorneys' fees and costs are disproportionate to the relief provided to the class, the requested fees are within the 25 percent benchmark in the Ninth Circuit.[3]

---

[1] Letter from Ian Kideys at 1, Oct. 5, 2012, ECF No. 117.

[2] *The Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *29 (C.D. Cal. June 10, 2005). All internal citations and quotations omitted, unless otherwise indicated.

[3] *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

General dissatisfaction with the outcome of a case, without factual or legal substantiation, should carry little weight in assessing the fairness and adequacy of the settlement.[4]

The second objector, Mr. Bill Waddington, disagrees with the content of the case and not to the terms of the settlement.[5] Essentially, Mr. Waddington argues that this case was unfair to Verizon Wireless and class members should recover nothing. Mr. Waddington offers a critique of this action, pointing out that the late fee and reconnect fee were express terms of a consumer contract and that class members voluntarily agreed to those terms.[6] Based on these facts, he concludes there was no wrongdoing by the defendant and that plaintiffs behaved improperly in pursuing this action. He has a "fundamental disagreement with individuals who feel they are entitled to something without fulfilling their obligations to receive it."[7] With all due respect, Mr. Waddington's position is based on a misreading of the complaint and a misunderstanding of the law. The consumer laws at issue in this case protect consumers from disproportionate liquidated damages penalties, regardless of their disclosure. Mr. Waddington's letter makes no reference to the proposed settlement or any terms therein with which he disagrees. Again, an unsupported objection to the merits of this action is not a sufficient ground to withhold any recovery to the remainder of class members.[8]

**B.     Requests from Two Additional Class Members, Mr. Huff and Mr. Quezada, Should Be Treated as Requests for Exclusion**

Class Counsel received an additional two letters from potential class members requesting both to object and opt-out. The first, by Mr. William Huff,[9] states that he wishes to remove himself

---

[4] *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F.Supp. 2d 732, 804 (S.D. Tex. 2008) (declining to address objections that are non-specific and unsupported by evidence or authority).

[5] Letter from Bill Waddington, Oct. 4, 2012, ECF No. 116.

[6] *Id.* at 2-3.

[7] *Id.* at 3.

[8] *In re Enron Corp.*, 586 F.Supp. 2d at 804.

[9] *See* Letter from William Huff, Sept. 12, 2012, ECF No. 111.

PLS.' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT– No. 07-cv-03679 JSW         - 2 -

010073-11  557894 V1

1   from the class and also object to the settlement. Class counsel contacted Mr. Huff and he stated that
2   his intention was to opt-out of the settlement.[10] By expressly excluding himself from the class, Mr.
3   Huff removed any standing he may have had to object to the class settlement.[11] Even assuming,
4   *arguendo*, that Mr. Huff has standing, his letter fails to state any factual basis or legal grounds for
5   objecting to the settlement. Instead, Mr. Huff notes that he was unable to ascertain the wrongdoing
6   by Verizon Wireless in the case documents he reviewed, and the bulk of his objection focuses on
7   the obstacles he faced in his efforts to exclude himself from the class. Yet, class members had
8   multiple avenues to request exclusion, including through the Court, the class action website
9   dedicated to the settlement, the Claims Administrator's toll-free telephone number and address, and
10  through class counsel.

11      Similarly, class counsel received a letter from Mr. Zenaido Quezada which stated that he
12  objected to the settlement because he did not want to be a part of the case and did not want his
13  legal rights impacted.[12] Class counsel tried to reach Mr. Quezada on multiple occasions to ascertain
14  his intent, with no success.[13] To preserve all of Mr. Quezada's legal rights, class counsel has
15  treated Mr. Quezada's letter as a request for exclusion and includes him on the list of opt-outs filed
16  with this motion.[14] Mr. Quezada did not raise any other grounds of objection.

---

[10]   Declaration of Shana E. Scarlett re Class Member Exclusion List and Objections to the Settlement ("Scarlett Decl."), ¶ 3, filed concurrently herewith.

[11]   *See* Fed. R. Civ. P. 23(e)(5) (providing "any class member may object" to a proposed settlement); *Mayfield v. Barr,* 985 F.2d 1090, 1092 (D.C. Cir. 1993) (holding "[t]hose who are not class members, because they are outside the definition of the class or have opted out" lack standing to object to class settlement); *Jenson v. Cont'l Fin. Corp.*, 591 F.2d 477, 482 n.7 (8th Cir. 1979) ("Opt-outs . . . are not members of the class and hence are not entitled to the protection of Rule 23(e)."); *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *26 (N.D. Cal. Jan. 26, 2007) (holding that a class member who submitted objections to the settlement and also opted out "is no longer a class member, he has no standing to object"); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, No. 5:09-md-02015, 2011 U.S. Dist. LEXIS 55351, at *13 n.3 (N.D. Cal. May 17, 2011) ("Class members who opt out lack standing to object to a settlement.").

[12]   Letter from Zenaido Quezada, Oct. 5, 2012, ECF No. 119.

[13]   Scarlett Decl., ¶ 4.

[14]   Scarlett Decl., Ex. 1 at 2.

PLS.' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT– No. 07-cv-03679 JSW               - 3 -

010073-11  557894 V1

**C. The Proposed *Cy Pres* Distribution and Recipient Match the Underlying Objectives of this Lawsuit, Are Aligned with the Interests of Class Members, and Will Benefit a Class Not Remote from the Settlement Class**

Three objectors – James Poindexter, Cery Perle and Jeffrey Palmer – object to the *cy pres* beneficiary.[15] Their objections, however, fail to deal with the terms of the settlement and misapprehend the nature of the *cy pres* beneficiary. Not only do these objectors fail to recognize that the proposed *cy pres* beneficiary will recover only after (and if) amounts remain in the settlement fund if class members fail to cash their checks, but they also fail to recognize the broad community outreach performed by this non-profit organization.

**1. The Objection to the *Cy Pres* Recipient Is Speculative – Distribution Will Only Be Made if Class Members Do Not Cash Their Checks**

Under this settlement, monies will only be given to a *cy pres* recipient if, after a *pro rata* distribution to class members – where every possible dollar in the common fund is distributed to class members – a certain amount of money remains in the settlement fund because of uncashed checks.[16] This provision was meant only to provide some finality to the settlement process; and the alternatives to a *cy pres* recipient would be a second round of distribution to class members; the money escheats to the state; or the money reverts to defendant.[17] A second round of distribution to the class was simply not economically feasible, given the small amount of money that would be available, and the cost of distribution. Escheating to the state (or federal government) provides no nexus to the claims and objectives of this litigation. And reversion to defendant is not an option that benefits any class member. Plaintiffs have made the most economically sensible choice here, in choosing a *cy pres* recipient.

Although objectors Poindexter, Perle and Palmer complain that *cy pres* is a "much abused vehicle to close cases and pay lawyers,"[18] they fail to explain how this is true ***in this case*** where

---

[15] *See* Scarlett Decl., Ex. 2 (Objections of James J. Poindexter, Cery Perle and Jeffrey Palmer to Proposed Settlement and Notice of Intent to Appear ("Palmer Obj.")), received Oct. 9, 2012.

[16] Stipulation of Settlement Pursuant to Fed. R. Civ. P. 23 ("Settlement Agreement"), ¶ 5, May 29, 2012, ECF No. 104

[17] *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).

[18] Palmer Obj. at 3.

every effort has been made to return money to class members. The cases cited by these objectors are all instances where the *cy pres* distribution vehicle has been used ***in place of*** distribution to class members.[19] The objection regarding *cy pres* fails to understand the nature of the *cy pres* distribution.

### 2. The Proposed *Cy Pres* Meets the Required Nexus to the Class

Recent Ninth Circuit case law has clarified the standards for a *cy pres* recipient; the requirement is that the award is guided by: the objectives of the underlying statute(s) and the interests of the silent class members, and must not benefit a group too remote from the plaintiff class.[20] Here, the designated *cy pres* recipient, The California Council on Economic Education ("California Council"), meets each of these criteria.[21]

#### a. The Proposed Recipient Meets the Objections of the Underlying Statutes and the Interests of Silent Class Members Because Financial Literacy Is Critical to Understanding the Economic Consequences of Liquidated Damages Penalties

The designated recipient shares the same objectives as the underlying consumer protection statutes in the case and the interests of silent class members. As the Ninth Circuit noted in *Dennis,* the consumer protection laws such as the California's Unfair Competition Law and California's Consumers Legal Remedies Act (claims in this case) are to protect the public "from nefarious and unscrupulous business practices" and to "protect consumers against unfair and deceptive business practices."[22] This case challenged defendants' imposition of fees as disproportionately high charges to customers. Regardless of how either side would characterize the legality of these fees, a driving

---

[19] *See Dennis v. Kellogg Co.*, No. 11-55674, 2012 U.S. App. LEXIS 18576, at *6-*7 (9th Cir. Sept. 4, 2012) (where the settlement agreement included a $5.5 million *cy pres* award reserved for unspecified "charities that feed the indigent," rather than class members); *Six Mexican Workers*, 904 F.2d at 1304 (where the majority of the settlement fund was to convert into unclaimed funds subject to *cy pres* distribution due to an inability to locate the undocumented, farm worker class members); *In Re: Groupon, Inc. v. Mktg. and Sales Practices Litig.*, No. 11-md-2238, Order Denying Joint Motion for Final Approval of Class Action Settlement, at 15-16 (S.D. Cal. Sept. 28, 2012) (where the settlement agreement included a $75,000 *cy pres* award reserved for the *cy pres* recipients).

[20] *Dennis*, 2012 U.S. App. LEXIS 18576, at *13.

[21] *See* Notice of Designation of *Cy Pres* Recipient Pursuant to Settlement Agreement, Sept. 27, 2012, ECF No. 115.

[22] *Dennis*, 2012 U.S. App. LEXIS 18576, at *17.

concern behind the litigation was the high cost paid by consumers who were delinquent on their bills. In essence, customers were paying a high interest loan to Verizon Wireless in exchange for paying their bills a few days or weeks late. Failing to understand the consequences of a liquidated damages penalty literally costs Californians millions of dollars every year.

The California Council is a non-profit organization dedicated to helping Californians achieve economic and financial literacy.[23] Coming on the heels of a financial crisis where growing personal debts have dramatically impacted the lives of consumers and class members, the designation of a non-profit organization dedicated to teaching financial literacy is the obvious choice. Knowledge is power, and in this case, financial literacy resources will empower Californians and class members in making financial choices. Given the California Council's dedication to advancing the economic literacy in California, a sufficient nexus exists to the objective in this case – educating consumers on the true cost of penalties in consumer contracts.

### b. The Proposed Distribution Will Not Benefit a Group Too Remote from the Plaintiff Class

The *cy pres* recipient here also must not benefit a group too remote from the plaintiff class. Here, the *cy pres* recipient is a California-based organization (in San Bernardino, California), serving the people of California.[24] The organization educates only in California, meeting the necessary geographic nexus in this case.

And the proposed *cy pres* recipient also actively educates the class members in this case. Although objectors Poindexter, Perle and Palmer focus on California Council's education plans in K through 12 schools, the California Council also performs a large amount of outreach work in California communities. For example, in August 2012, the California Council held a joint event with the Federal Reserve Bank which was open to the general public, which provided participants with access to experts in financial education.[25] The California Council is planning three events in the coming months, each of which will be providing information on financial literacy, and each of

---

[23] Declaration of Jim Charkins in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Charkins Decl."), ¶ 6, concurrently filed herewith.

[24] *Id.*

[25] *Id.*, ¶ 7.

which will be open to the general public.[26] The California Council continuously performs outreach projects throughout Southern and Northern California, providing seminars to residents on such fundamental economic principles as budgeting and banking.[27] The California Council is also actively working on developing an online classroom, which again, will be open and available to all members of the public with a simple registration.[28]

Objectors Poindexter, Perle and Palmer characterize the selection of the proposed *cy pres* recipient as "an afterthought," but nothing could be further from the truth. The Settlement Agreement required the *cy pres* recipient to be both "mutually acceptable" and "conflict free"[29] by the parties. Non-profit charities within the wireless industry failed this test – plaintiffs would not accept a non-profit entity in the wireless industry where Verizon Wireless was a board member or frequent donor, and defendant Verizon Wireless would not accept "industry watchdog" non-profit that actively oppose Verizon Wireless in regulatory matters. It was only after it became clear that a non-profit designee within the wireless industry was not possible, that the parties looked outside the industry to non-profits dedicated to financial literacy.

The proposed *cy pres* recipient here: (1) addresses the objectives of this case in educating consumers on the harms of damages penalties in consumer contracts; (2) targets the plaintiff class through a charity active in California, with frequent community outreach programs; and (3) provides reasonable certainty that a member of the class will benefit, given the existence of five million individuals in the class, and the reach of the proposed *cy pres* recipient throughout California.[30] Under all Ninth Circuit standards, the parties' proposed *cy pres* beneficiary is proper.

**D.     The Objections of Class Members Poindexter, Perle and Palmer to Plaintiffs' Attorneys' Fees Are Unfounded**

Class members Poindexter, Perle and Palmer also object to this Court that the request for attorneys' fees of 25 percent of the settlement fund are unreasonable. These class members address

---

[26] *Id.*

[27] *Id.*, ¶ 8.

[28] *Id.*, ¶ 10.

[29] *See* Settlement Agreement at 8.

[30] *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011).

three of the factors to be considered – the degree of difficulty in the litigation, the time and labor expended by counsel, and the results achieved. Plaintiffs briefly address each of these.

### 1. The Degree of Difficulty in the Litigation

The objectors blithely assert that this lawsuit does not involve any novel legal questions.[31] As articulated in plaintiffs' motion for attorneys' fees, and plaintiffs' motion for final approval, this case involved many novel legal issues – not the least of which was whether the Federal Communications Act preempted plaintiffs' claims. This issue was briefed three times before this Court – and was eventually referred to the Federal Communications Commission for resolution – resolution which still has not occurred two years later. Moreover, the objectors fail to recognize the significance of the Supreme Court's opinion in *AT&T Mobility LLC v. Concepcion*, which presented a strong risk that plaintiffs' claims would be compelled to arbitration; and the claims of absent class members would be dismissed outright.[32] This, combined with the other risks outlined by plaintiffs certainly presented a high degree of difficulty in this litigation.

### 2. Plaintiffs Invested a Significant Amount of Time in this Litigation

The objectors also dismiss the work of class counsel as taking "some discovery," responding to a few "motions to dismiss," then wait[ing] on the FCC."[33] Such a casual dismissal of the work of class counsel is unwarranted. There was not "some discovery" – there was plenary discovery, including written discovery, depositions and document productions.[34] Motion practice was not limited to a few motions to dismiss, but were heavily litigated (and complicated) motions to dismiss involving issues of preemption, requests for certification of an appeal to the Ninth Circuit, and the filing of a motion for class certification (including the declaration of an expert describing plaintiffs' proposed damages model).[35] And plaintiffs did not sit around waiting on the

---

[31] Palmer Obj. at 5.

[32] *See* __U.S. __, 131 S. Ct. 1740 (2011).

[33] Palmer Obj. at 5.

[34] *See* Declaration of Jeff D. Friedman in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Friedman Decl."), ¶ 2, concurrently filed herewith.

[35] *See* Defendant Cellco Partnership's (d/b/a/ Verizon Wireless) Notice of Motion and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Points and Authorities, Aug. 22,

PLS.' RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT– No. 07-cv-03679 JSW - 8 -

010073-11 557894 V1

Federal Communications Commission – these plaintiffs filed the petition for relief before the Federal Communications Commission, responded to the comments of all the major carriers to the petition, and retained an expert, Dr. Yale Braunstein from the University of California, Berkeley, to provide testimony to the Federal Communications Commission to assist in any decision on preemption, including the distinction between a "rate" and an "other term and condition."[36] Dr. Braunstein testified in response to an expert retained by defendant Verizon Wireless, Dr. Robert G. Harris, who submitted testimony to support Verizon Wireless' position that late payment charges and reconnection fees were "rates" within the meaning of the Federal Communications Act of 1934.[37]

Class Counsel vigorously and actively represented the rights of the plaintiffs and absent class members in this litigation

### 3. The Results Achieved Are Outstanding

In the face of the mandatory arbitration clause in this case (prohibiting class actions), in addition to the other risks faced by the class, the results achieved here are outstanding. As explained in the accompanying request for final approval, plaintiffs estimate that class members who submit claims will receive roughly 69 percent of their estimated damages.[38] This recovery is certainly substantial enough to merit the requested attorneys' fees.

### E. Objectors Poindexter, Perle and Palmer Are Represented by "Professional" Objector's Counsel and Any Request for Fees Should Be Denied

Class counsel recognize that at times, objectors provide genuine assistance to the parties and the Court in identifying weaknesses in a proposed settlement. At other times, however, "serial"

---

2007, ECF No. 17; Defendant Cellco Partnership's (d/b/a Verizon Wireless) Notice of Motion and Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Points and Authorities, Aug. 31, 2007, ECF No. 22; Defendant Cellco Partnership's (d/b/a Verizon Wireless) Notice of Motion and Motion to Dismiss Plaintiff's "Reconnect Fee" Claims Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Points and Authorities, Jan. 23, 2009, ECF No. 65 and; Plaintiffs' Notice of Motion and Motion for Class Certification, May 18, 2009, ECF No. 82.

[36] Friedman Decl., ¶ 3.

[37] Id.

[38] See Plaintiffs' Notice of Motion and Motion for Final Approval of Class Action Settlement at 8, concurrently filed herewith.

or "professional" objectors file objections merely to extract payments from parties or counsel in litigation to avoid years of delay associated with unmeritorious settlement objections:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.[39]

Here, counsel for three objectors, Mr. Joseph Darrell Palmer, leaves a long trail of class action settlement cases (only a few of which plaintiffs reference here) where he has appeared on behalf of objectors, wherein objections were raised, overruled by the court, later withdrawn, abandoned or dismissed prior to or on appeal – all without any apparent benefit to the classes at issue.[40] As in *In Re: Currency Conversion Antitrust Litig.*,[41] where the Court found Mr. Palmer's objections "so general and repetitive that they were of no assistance to an area with which this Court is intimately familiar"[42] – so too should this Court reject Mr. Palmer's general objections to this settlement.

---

[39] *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-*4 (D. Mass. Aug. 22, 2006).

[40] *See, e.g.*, *Berger v. Property I.D.Corp.*, No. CV 05-5373, Order Granting Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses (C.D. Cal. Jan. 28, 2009) (award of fees, to which Palmer had objected, was granted; final approval granted same day, (ECF No. 900), not referencing Palmer's objections); *In re Broadcom Corp. Class Action Litig.*, No. 06-cv-5036, Order Denying Objection and Requiring Appeal Bond (C.D. Cal. Aug. 8, 2010) (overruling Mr. Palmer's objection and requiring $10,000 appeal bond; appeal subsequently voluntarily dismissed); *Browning v. Yahoo! Inc., et al.*, No. C04-01463, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) (overruling objections; appeal subsequently voluntarily dismissed); *In re Cellphone Termination Fee Cases*, Alameda Super. Ct., JCCP No. 4332 (final approval granted and fees awarded with no mention of Mr. Palmer's objections; appeal subsequently voluntarily dismissed); *In re Chiron Shareholder Deal Litig.*, Alameda Super. Ct., No. RG5230567, (final approval granted and fees awarded with no mention of Mr. Palmer's objections; appeal subsequently voluntarily dismissed); *Collins v. Am. Honda Motor Co.*, Alameda Super. Ct., No. RG3099677 (final approval granted and fees awarded with no specific mention of Mr. Palmer's objections; appeal subsequently voluntarily dismissed); *In re: Countrywide Fin. Corp. Customer Data Security Breach Litig.*, No. 08-MD-01998, (W.D. Ky.) (final approval granted and fees awarded; finding that objections were without merit; appeal subsequently voluntarily dismissed).

[41] 263 F.R.D. 110, 132 (S.D.N.Y. 2009), *aff'd*, Priceline.com, Inc. v. Silberman, 405 Fed. Appx. 532 (2d. Cir. 2010).

[42] *Id.* at 132

### III. CONCLUSION

After five years of litigation, Verizon Wireless has agreed to make available $10 million to settle the claims of the class. The objectors present no grounds why this settlement is not adequate, fair and reasonable. Respectfully, plaintiffs request that this Court grant final approval.

DATED: October 12, 2012　　　　　　　　HAGENS BERMAN SOBOL SHAPIRO LLP


By _____/s/ Jeff D. Friedman_____
　　　　JEFF D. FRIEDMAN

Steve W. Berman (*Pro Hac Vice*)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
steve@hbsslaw.com
jefff@hbsslaw.com
shanas@hbsslaw.com

Mark Chavez (90858)
Nance F. Becker (99292)
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 388-5599
Facsimile: (415) 381-5572
mark@chavezgerler.com
nance@chavezgerler.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2012, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

        /s/ Jeff D. Friedman
        JEFF D. FRIEDMAN